[Civ. No. 4030. First Appellate District, Division Two.—December 30, 1921.]

C. H. BEGGS, as Special Administrator, etc., Plaintiff and Appellant, v. MARY D. SPALDING, Defendant and Appellant.

[1] VENDOR AND VENDEE—PURCHASE OF ORANGE ORCHARD—PRESENCE OF OAK-ROOT DISEASE—MODIFICATION OF CONTRACT—EFFECT UPON REPRESENTATIONS.—A vendee of an orange orchard has no rights growing out of any representations made by the vendor at the time of entering into the original contract concerning the extent to which the property was infected with "oak-root disease," where subsequent thereto the vendee caused an independent examination to be made and upon discovery of the presence of such disease the contract was modified by a reduction of the purchase price and an extension of the time of payment.

[2] ID.—SPREADING OF DISEASE—STATEMENT OF OPINION.—The statement of the vendor of an orange orchard that he "was sure said oak-root disease would not spread any further," was a mere expression of opinion and one upon which the vendee was not entitled to rely, where she had made personal investigations and secured literature on the subject.

[3] ID.—CHARACTER OF SOIL—RELIANCE UPON REPRESENTATIONS.—A vendee of an orange orchard is not entitled to rely upon statements made by the vendor regarding the soil, where her own relatives at her own request made independent examinations of the property and they were as competent to judge of the matter as the vendor.

2. Whether opinion constitutes legal representation, note, 18 **Am. St. Rep.** 556.

APPEALS from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Carnahan & Clark for Plaintiff and Appellant.

Howard Robertson, T. R. Spalding and C. D. Houghton for Defendant and Appellant.

LANGDON, P. J.—This action was brought by George C. Mathews to foreclose a mortgage in the sum of $24,000, covering an orange orchard of about twenty-two acres, sold by him to the defendant for the sum of $40,000. Before the trial the plaintiff died and C. H. Beggs, special administrator of his estate, was substituted as plaintiff. The defendant in her amended answer, after certain admissions and denials, pleaded as a further and separate defense and by way of counterclaim that said Mathews had made to her certain false and fraudulent representations in regard to the extent to which a certain disease called "oak-root disease" would spread among the trees in the orchard, and in regard to the composition of the soil on the property; that she relied upon these representations to her damage in the sum of $14,000, which amount she asked to have set off against said $24,000 due on the mortgage. The trial court allowed to defendant a deduction of $2,500 from the amount of the mortgage because of damage due to the spread of the "oak-root disease" and gave judgment for plaintiff for the sum of $22,500 upon the mortgage, together with $1,000 for attorney's fees, $35 for expenses in searching the title and costs of suit. Both parties have appealed upon the judgment-roll, the plaintiff from that portion of the judgment wherein the sum of $2,500 is deducted from the principal sum due on the promissory note secured by the mortgage, and the defendant from the whole judgment except that portion thereof which is in her favor.

These are the facts, as found by the court: About the year 1906 George C. Mathews and his wife, jointly, acquired the property involved here and during the year 1907 and 1908 set out the same to orange trees. At all times mentioned the said Mathews was generally known to be and

was skillful, careful, and experienced in the planting, care, and cultivation of citrus fruit trees and the production of fruit therefrom, and was known to have had experience with and knowledge and judgment of the soil and locality best adapted to the growing and production of citrus fruits. Said property was traversed by a watercourse that divided the same so that about two and one-half acres lay on the southeasterly side thereof and about seventeen and one-half acres lay on the northwesterly side thereof. The banks of said watercourse were not perpendicular, but were flattened, sloping, and shelving and covered with a layer of soil of substantially the character and appearance of that upon the surface of the land adjoining said banks, and there was upon said sloping banks a growth of weeds, grass, and shrubs, which in a large measure covered and concealed the surface of the soil thereof. At the time when Mathews acquired the land there were five large growing oak trees and one old oak tree stump thereon, the locations of which are set out in the findings. Said Mathews did not have, at any time, any knowledge of the existence of any other oak trees or oak stumps or oak roots upon said premises. Mathews caused the land to be leveled and graded and planted to orange trees and at all times knew the kind, character, and composition of said land and the soil thereon. In preparing the land for setting out said orange trees Mathews cut down said oak trees which were upon the land and removed the stumps and large roots thereof and also removed said old oak stump and the large roots thereof.

On or about April 12, 1912, Mathews and defendant entered into an executory contract whereby Mathews agreed to sell and defendant agreed to buy said real property for the price of $40,000. At the time of the execution of said contract the title to said property was involved in the administration of the estate of the deceased wife of said Mathews and for that reason he was unable to convey title thereto, and it was provided, therefore, in said contract that the defendant should pay on account of said purchase price $16,000 in cash at the time of the execution of said contract, and should immediately enter into possession of said property and cultivate the same and harvest and market the crops thereon for a period of one year thereafter and that on or before the expiration of said year

Mathews should convey to the defendant a good title to said premises and said defendant should, contemporaneously therewith, pay to Mathews interest on $24,000 at six per cent per annum from the date of said contract to the date of said conveyance and also execute her certain promissory note in favor of said Mathews for the principal sum of $24,000, payable in three years after date, and to bear interest at the rate of six per cent per annum, and as security for the payment thereof should execute a first mortgage upon said real property. Said contract further provided that in the event said Mathews should be unable to convey title to said premises within said period of one year, said defendant should be released from any obligation to purchase said property, and thereupon the sum of $16,000 should be returned to said defendant.

Prior to the execution of said contract and during the negotiations therefor, said defendant personally inspected said premises and also caused said premises to be inspected for her by W. A. Spalding and W. R. Powell, her husband and brother-in-law, respectively, and each of said men was a competent and well-informed business man and W. R. Powell was experienced in the culture of citrus trees in that vicinity and for more than twenty-five years immediately preceding the execution of said contract said Spalding and said Powell had owned, jointly, about thirty acres of land improved with bearing citrus trees and situated in the same vicinity as the Mathews property, which said land so owned by Spalding and Powell was cultivated and managed by said Powell. Said defendant sought, received, and acted upon their advice and judgment in purchasing said land from plaintiff.

During the negotiations and prior to the execution of the contract the defendant was informed by one Arthur Powell that certain portions of said property from which said oak trees and said old oak stump were removed were infected with oak-root disease and that several trees in said area had died from that disease. Said Arthur Powell was the nephew of defendant and a person competent, skilled, and experienced in the diseases of citrus trees and was personally familiar with the grove situated upon said land sold to defendant by plaintiff, and defendant sought and received his advice and judgment in relation thereto.

Upon receiving said information and prior to the execution of said contract said Arthur Powell with said W. A. Spalding, for and on behalf of said defendant, and independently of said Mathews, entered upon and inspected said property for the existence and evidence of said oak-root disease, and said defendant sought and received expert and other advice concerning said disease. Prior to obtaining said information, as aforesaid, said defendant did not personally possess any knowledge or information concerning oak-root disease and did not know of the existence thereof in said land.

Prior to the execution of said contract, and for the purpose of inducing the defendant to execute the same, said Mathews stated and represented to said defendant that he had caused the trees to be planted in said land and was familiar with the soil thereof, and with the exception of an area of about three-fourths of an acre adjoining the said watercourse on its northerly side, said land was good, deep, strong soil, and suitable for the culture of citrus trees thereon; that he did not know of any oak trees, other than those hereinbefore mentioned, having ever existed upon said land; that he was familiar with oak-root disease and knew the extent to which the same would spread; that no trees upon said land other than those then affected by said disease could or would be affected by said disease, and that said disease would not and could not extend beyond the areas from which said oak trees and said old oak stump had been removed. Said defendant relied upon said statements and representations so made by said Mathews and did not further examine or investigate or test said land for the purpose of ascertaining its character and suitability for growing such trees, except that said defendant did further investigate the matter of oak-root disease and did secure literature thereon, and except for such statements of said Mathews and defendant's reliance thereon, she would not have purchased said property and entered into said contract.

At the time of the execution of the contract said defendant paid to said Mathews $16,000 on account of said purchase price and entered into possession of said property and at all times since has been, and now is, in possession and engaged in the cultivation thereof. At all times since

defendant took possession of said property one Volney Spalding, the son of defendant, has been actually residing upon said premises and personally superintending the care, cultivation, and management of said property at the request of said defendant and for her benefit, and said premises have at all times been cultivated carefully and in a husbandlike manner.

Mathews was unable to and did not convey to defendant title to said land within the time limited by said contract and said defendant, upon the expiration of said time, notified said Mathews that she had discovered that five or seven additional orange trees situated in the areas from which said group of three oak trees and said old oak stump had been removed were seriously affected with oak-root disease, and that she would not complete the purchase of said land unless said Mathews would make a reduction in said purchase price to indemnify her for the existence of said disease.

Thereupon said Mathews, for the purpose of inducing said defendant to purchase said land, offered to release her from the payment of the interest for the preceding year on the unpaid portion of said purchase price, which said interest amounted to $1,440, and to let the said note and mortgage run for five years instead of three years, and further represented and stated to said defendant that he was sure that said oak-root disease would not spread any further and that said disease would not and could not extend beyond the areas from which said oak trees and said old oak stump had been removed. Said defendant believed said representations and was thereby induced to and did accept said offer of said Mathews to waive the payment of interest and to extend the time for the payment of said note and mortgage, and thereupon, on or about May 1, 1913, said Mathews waived the payment of said interest and conveyed said premises to defendant, and said defendant accepted said waiver and conveyance and executed her promissory note in favor of said Mathews for the principal sum of $24,000, and also executed said mortgage securing the same.

Within a few months after the execution of said note and mortgage other orange trees situated in the areas from which said Mathews had removed said three oak trees and

said old oak stump became infected with said oak-root disease and subsequently died therefrom.

[1] From these findings it seems clear that in the first instance defendant did not depend or rely upon Mathews' representations regarding the spread of oak-root disease, but made independent investigations and was assisted in said independent investigations by her husband, brother-in-law, and nephew, men experienced in business and in this particular business of raising citrus fruit and, so far as the findings show, no less skillful and able to form a reliable judgment upon this matter than was Mathews; and it was found by the trial court that in purchasing said property, the defendant "received and acted upon their advice and judgment." But be that as it may, when it became apparent that orange trees within the area from which the oak trees had been removed were affected by this disease, Mathews made a very substantial allowance to defendant on this account, thus wiping out any claim she could possibly have had on this matter. She was allowed $1,400 and an additional extension of two years in the time for payment of her note, which was drawing interest at only six per cent. It is beyond dispute that defendant has no rights now growing out of any representations made by Mathews at the time she entered into the original contract. The parties did not go on with that contract, but modified and changed the same. Now, when the new contract or compromise was made and the conveyance, mortgage and notes were executed, Mathews stated to defendant "that he was sure said oak-root disease would not spread any further and that said disease could not and would not extend beyond the areas from which said oak trees and said old oak stump had been removed." According to the findings, the latter portion of this statement was correct, and it was found that the trees affected by the disease were situated within the area from which said Mathews had removed said oak trees. [2] As to the other portion of the statement that Mathews "was sure said oak-root disease would not spread any further," we think it was a mere expression of opinion and one upon which the defendant was not entitled to rely. In the first place, defendant had had independent advice on that subject from several persons as competent to judge as Mathews; she had made personal

investigations and had secured literature on the subject, and Mathews' statement was merely his opinion about an uncertain future condition and could not have been intended for nor accepted as a guarantee. Furthermore, Mathews had previously stated the same thing when the contract was originally entered into, and defendant had found that his opinion was erroneous and that the disease had spread within the affected area, and Mathews had acknowledged the fallacy of his previous opinion by allowing the defendant $1,400 in cash and other valuable rights to compensate her for any damage she might have suffered by reliance upon this statement. Clearly, under all these facts, defendant could not blindly rely upon this statement and ignore all information received by her independently from her relatives and her own investigations and her reading on the subject, as well as her experience of the previous year, and then predicate a cause of action upon such reliance.

We are of the opinion that the allowance of $2,500 made by the trial court because of the further spread of the oak-root disease within the area from which the oak tree had been removed was erroneous under the facts found.

But a further claim for damages is made by defendant predicated upon the following facts found by the trial court: During the month of February, 1914, an unusually large volume of flood water was concentrated in the watercourse upon said property and by reason thereof both of the banks of said watercourse upon said property, for practically their entire length across said property, were eroded and cut away to a depth varying from six to ten feet and said banks were extended back into said property many feet and clearly disclosed the true composition of said land, and that substantial areas of said property situated in that portion of said property which said Mathews had represented as containing good, deep, strong soil, consisted of a top layer of loose, sandy soil, varying in depth from three to ten inches, and immediately underneath said soil layer there existed a stratum of coarse gravel and sand, varying in depth from ten inches to two feet. By reason of the composition of portions of said land, as aforesaid, there were only about fifteen acres of said land reasonably suitable for the growth and maturity of citrus trees. This condition was made ap-

parent, as stated, in 1914, at a time when the property was being cultivated by defendant's son for and on her behalf.

Defendant claims the right to an allowance because of the actual soil condition, by reason of the fact that the trial court found that Mathews had represented to defendant that he was familiar with the soil and that with the exception of an area of about three-quarters of an acre adjoining the watercourse on its northerly side, said land was good, deep, strong soil and suitable for the culture of citrus trees thereon, and that defendant did not further examine or test said land for the purpose of ascertaining its character and suitability for growing said trees, and except for such statements of said Mathews and her reliance thereon, would not have purchased said property and entered into said contract.

The court also found that defendant paid the interest upon her note as the same matured to November 12, 1917, but has not paid any interest thereon since said date and has refused to pay the principal sum thereof; that she had actual and constructive knowledge of the true composition of said land more than three years prior to the commencement of this action.

No finding was made as to the amount of defendant's damage due to the misrepresentations as to the composition of the soil, and the trial court denied defendant relief as to this matter, evidently upon the theory that her right was barred by the statute of limitations. It is contended by the defendant and appellant that in the application of the statute of limitations to defendant's right to avail herself of these misrepresentations as to the soil in defense to an action upon the note, the trial court erred. It is argued that while a party seeking relief upon the ground of fraud or mistake must commence his action within three years after discovery of the facts constituting the fraud or mistake, a different case is presented where the guilty party is seeking enforcement of the contract and the fraud is set up as a defense. We may concede this to be true, but, nevertheless, we are of the opinion that the defendant was entitled to no setoff against the mortgage debt because of the statement of Mathews regarding the soil. The court has found that prior to the execution of the contract between the parties and during the negotiations therefor, the defendant personally inspected the premises and caused them to be

inspected for her by her husband and brother-in-law, and each of said men was a competent and well-informed business man and defendant's said brother-in-law was experienced in the culture of citrus trees in that vicinity, and for more than twenty-five years immediately preceding the execution of said contract defendant's said husband and brother-in-law had owned, jointly, about thirty acres of land improved with bearing citrus trees and situated in the same vicinity as the Mathews property, which land was cultivated and managed by defendant's said brother-in-law, and defendant sought, received, and acted upon their advice and judgment in purchasing said land.

[3] It is true there appears to be a conflict in the findings due to the fact that the court found that except for the statements of Mathews and defendant's reliance thereon, she would not have purchased the property. But that conflict becomes immaterial here, because we think defendant had no right to rely upon Mathews' statements regarding the soil, under all the facts shown here. Her own relatives were as competent to judge of the matter as was Mathews, and three of them made examinations of the property independently of Mathews at the request of defendant, and defendant's husband acted for her in negotiations for the contract. The soil was actually sustaining the trees at the time of the purchase and defendant saw them growing thereon, and she and her husband and brother-in-law and nephew had every opportunity to investigate and judge for themselves of the adaptability of the soil for the purpose for which it was being used. The court had found that she acted upon the advice and judgment of these persons who were, presumably, interested in her financial welfare and whose advice she sought. She is not in a position now to shift the responsibility to Mathews and was not entitled to rely upon his statements as to a matter of this kind under all the facts and circumstances shown here, and such statements do not furnish a cause of action. (12 R. C. L., sec. 135; *Gordon* v. *Parmelee,* 2 Allen (Mass.), 212, 214.) Therefore, quite apart from the statute of limitations, the defendant is entitled to no offset against the money due upon the mortgage.

The judgment is modified so that the first paragraph thereof will read as follows: "That plaintiff do have and recover of said defendant Mary D. Spalding, the principal sum of $24,000, together with interest thereon at the rate of six per cent per annum from the 12th day of November, 1917, and that said interest be compounded semi-annually." The balance of the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 27, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.*, was acting.