ALEXANDER et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.  July 17, 1893.)

No. 53.

1. APPEAL—DECISION ON MOTION FOR NEW TRIAL—FEDERAL COURTS—REVIEW
   IN CIRCUIT COURT OF APPEALS.
   The rule that the decisions of the circuit and district courts on motions
   for new trial are not reviewable applies to review in the circuit court of
   appeals, as well as in the supreme court.  Railroad Co. v. Howard, 1 C. C.
   A. 229, 49 Fed. Rep. 206, approved.

2. SAME—REVIEW OF DECISION OF TERRITORIAL COURT.
   The fact that the decision of a territorial district court on a motion for
   a new trial is reviewable in the territorial supreme court does not make
   such a decision by a United States district court reviewable by the circuit
   court of appeals, although the cause, pending the motion for a new trial,
   has been removed from the territorial district court upon the admission
   of the territory into the Union.  Bates v. Payson, 4 Dill. 265, distinguished.

3. SAME—TIME OF TAKING — WHEN LIMITATION BEGINS TO RUN — EFFECT OF
   MOTION FOR NEW TRIAL.
   In the territory of Idaho, decisions of the territorial district courts on
   motions for new trial were reviewable by the territorial supreme court.
   Judgment was rendered by a territorial district court, and motion for a
   new trial made, pending which the territory was admitted to the Union,
   and the cause removed to the newly-created United States district court.
   Held, that the six months to which the time for suing out of a writ of
   error from the circuit court of appeals was limited by the judiciary act
   of March 3, 1891, § 11, (26 Stat. 829,) did not begin to run until the motion
   for a new trial was finally disposed of.  Railway Co. v. Murphy, 4 Sup.
   Ct. Rep. 497, 111 U. S. 488, followed.

4. EXCEPTIONS, BILL OF — STATEMENT ON MOTION FOR NEW TRIAL MAY TAKE
   THE PLACE OF.
   A statement made and filed in the trial court in aid of a motion for a
   new trial, containing a statement of what purports to be all the excep-
   tions taken and allowed, and all the evidence relating to the same, if reg-
   ularly settled and allowed by the trial judge, is sufficient to serve as a
   bill of exceptions on writ of error.

5. EVIDENCE—BEST AND SECONDARY — ACCOUNTS OF DEFAULTING POSTMASTER.
   In an action on a defaulting postmaster's bond, a question to the default-
   er's successor in office whether he had received orders to make demands
   on the defaulter is not objectionable on the ground that the written or-
   ders are the best evidence of their contents, since the question does not
   concern the contents.

6. SAME—ITEMS OF ACCOUNTS—IDAHO STATUTE.
   An action by the United States upon a defaulting postmaster's bond,
   brought in a district court of the territory of Idaho, is not within the
   meaning of Rev. Laws Idaho, § 4209, (St. 1887,) requiring plaintiffs to fur-
   nish the items of accounts sued upon; and the United States may refuse
   such items, and thereafter introduce in evidence copies of the account
   current and the money-order account of the defaulter.

7. SAME—CREDITS CLAIMED AGAINST UNITED STATES — REV. ST. § 951—ACTION
   ON POSTMASTER'S BOND.
   Rev. St. § 951, providing that, in suits by the United States against in-
   dividuals, no credit shall be admitted on trial unless presented to the
   treasury and disallowed, applies to payments by sureties of a defaulting
   postmaster on account of his liability, made in cash, as well as to credits,
   when evidence of such payments is sought to be introduced by the sureties
   in an action against them on the bond.

**8. POST OFFICE — LIABILITY OF SURETIES ON POSTMASTER'S BOND — TRIAL — DIRECTING VERDICT.**

Sums recovered from a defaulting postmaster by his sureties, and paid over to the United States, should be credited upon the general account of the defaulter, and not upon the liability of the sureties; and where the defalcation, after making such credits, is largely in excess of the liability of the sureties, and, in an action against them, no evidence is offered in defense except the payment of such sums, an instruction to find a verdict for the United States is not erroneous.

In Error to the District Court of the United States for the District of Idaho.

At Law. Action in the district court of the first judicial district of the territory of Idaho against Joseph Alexander and others, as sureties upon the bond of one Hibbs, a defaulting postmaster. Judgment was given for plaintiff, and, pending a motion for a new trial, the cause was transferred, on the admission of the territory into the Union as a state, to the district court of the United States for the district of Idaho, by which the motion was denied. Defendants bring error. Affirmed.

Rothchild & Ach, for plaintiffs in error.

Fremont Wood, for the United States.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. An action was brought in 1886 in the district court of the first judicial district of the territory of Idaho to recover from the sureties on the bond of one Hibbs, a postmaster, $10,000, the penalty of the bond. On November 28, 1888, judgment was rendered for that amount upon the verdict of the jury in the case. On December 1, 1888, notice was given of the intention of defendants to move for a new trial, and subsequently, in accordance with the practice of that court, a statement of the case was settled, with exhibits to be used on the motion for new trial. On April 15, 1889, the motion was submitted to Judge L. L. Logan, of that court, and was by him taken under advisement until November 27th following, when he denied the motion. This decision on the motion was considered void, for the reason that, at the time it was rendered, a successor to Judge Logan had been appointed and qualified, and had assumed the duties of the office. On July 3, 1890, Idaho was admitted into the Union as a state, and by the act of admission this cause was transferred to the district court of the United States for the district of Idaho. On May 19, 1891, application was made to that court for an order setting aside the decision of Judge Logan denying the motion for new trial. On May 25th the application was granted, and on December 14, 1891, the motion for new trial was overruled. On April 2, 1892, the writ of error and citation were issued by which the record was brought into this court.

It is contended on behalf of the defendant in error that the writ must be dismissed, for the reason that a writ of error will not

lie to review the decision of a district court of the United States granting or overruling a motion for a new trial, and for the further reason that the judgment of the territorial court sought to be reviewed was rendered more than six months prior to the time of suing out the writ.

Upon the first point the law is well settled. The decisions of the circuit and district courts upon motion for a new trial are not reviewable. It is held that the motion for a new trial is designed only to invoke the judgment of the trial court upon the alleged errors set out in the motion, and that its office and function are limited to that court. Doswell v. De La Lanza, 20 How. 29; Railway Co. v. Struble, 109 U. S. 381, 3 Sup. Ct. Rep. 270; Missouri Pac. Ry. Co. v. Chicago & A. R. Co., 132 U. S. 191, 10 Sup. Ct. Rep. 65; Ayers v. Watson, 137 U. S. 584, 11 Sup. Ct. Rep. 201; Fishburn v. Railway Co., 137 U. S. 60, 11 Sup. Ct. Rep. 8. And the rule is applicable to the circuit court of appeals. Railway Co. v. Howard, 1 C. C. A. 229, 49 Fed. Rep. 206; McClellan v. Pyeatt, 1 C. C. A. 613, 50 Fed. Rep. 688.

But it is contended that, inasmuch as, by the laws of Idaho in force at the time the judgment was rendered therein, and at the time the motion for a new trial was filed, an appeal would lie to the supreme court of the territory, the right of appeal from the decision on that motion is still conserved to the plaintiffs in error; and they point to the case of Bates v. Payson, 4 Dill. 265, as sustaining that view. We do not so understand the doctrine of that decision. That was a case arising under the act admitting Colorado into the Union, and declaring the federal court to be the successor of the supreme court of the territory as to certain cases, with power to proceed therein "in due course of law." The question arose whether an action at law which had been taken by appeal to the territorial supreme court, and thence transferred by the act to the circuit court of the United States, could be properly regarded as pending in the latter court, since, by the practice of that court, no action at law could be taken thereto by appeal, but must needs be taken by a writ of error. The court decided, in effect, that, inasmuch as the cause was pending in the territorial supreme court, the circuit court would not consider the method of procedure by which it was taken there, but would proceed as that court would have proceeded if it had retained the case. That decision does not affect the question of the method of procedure in the circuit court. There can be no doubt that a cause removed or transferred to a circuit or district court of the United States on the admission of a territory into the Union must, from the time of transfer, be subject to the rules of practice and procedure of the court to which it is so removed, and the provision of the statute that the latter court shall proceed "in due course of law" means no more than this. It is clear, therefore, that no appeal or writ of error would lie to this court from the decision of the district court of Idaho overruling the motion for a new trial.

But, upon inspecting the writ of error in this case, it will be

seen that it does not purport to be brought to review the decision on the motion for a new trial. By its terms it is equally applicable to the judgment upon the verdict of the jury, and the question arises whether the six months within which to sue out the writ, as limited by section 11 of the act creating the circuit court of appeals, had expired on April 2, 1892. We are of the opinion that it had not, and that the judgment of the territorial court was suspended by virtue of the motion for a new trial, which had been filed in due time, and which had been entertained by the court, and that it was so suspended until the final disposition of that motion. In Brockett v. Brockett, 2 How. 238, it was held that a petition for a rehearing filed during the term, and actually entertained by the court, suspended the operation of a decree in equity until the petition was disposed of. In Cambuston v. U. S., 95 U. S. 287, by implication, the same doctrine was held; but it was decided in that case that, if the motion for a new trial is not filed during the term when judgment was rendered, the time for taking an appeal runs from the entry of the judgment. In Railway Co. v. Murphy, 111 U. S. 488, 4 Sup. Ct. Rep. 497, a judgment of the supreme court of the state of Texas was sought to be reviewed by writ of error. Some six months after the entry of the judgment in the supreme court of Texas a motion for rehearing was entertained and decided by that court. It was held that the time limited for writ of error to the supreme court of the United States did not begin to run until the petition for rehearing was disposed of. Similar decisions have been rendered in the circuit courts in Rutherford v. Insurance Co., 1 Fed. Rep. 456; Brown v. Evans, 8 Sawy. 502, 18 Fed. Rep. 56. There is nothing contained in the language of the act regulating writs of error and appeal to the circuit court of appeals which would render these decisions inapplicable to this case.

The motion to dismiss the writ is therefore denied.

The objection is made that the record contains no bill of exceptions. We find no difficulty in treating the statement which was made and filed in aid of the motion for a new trial as a bill of exceptions, for the purposes of this writ. It contains a statement of what purport to be all of the exceptions taken and allowed on the trial, together with all the evidence relating to the same. It appears to have been regularly and in apt time settled and allowed by the trial judge. It contains all the essential features of a bill of exceptions.

The first assignment of error is that the court overruled the objection made to the question propounded to the Postmaster Kress, who was successor to Hibbs, when he was asked: "Did you ever receive any orders from the post-office department in regard to making any demands on Mr. Hibbs?" It is contended that, since the orders were in writing, they were themselves the best evidence of their contents. It is a sufficient answer to this objection to point to the fact that the question did not call for the contents of the orders. It called simply for information about the

receipt of the orders from the post-office department. The answer to the question was properly made by parol, and it would have been a sufficient answer if the witness had said either "Yes" or "No." The fact that he proceeded to set forth something of the contents or purport of the orders does not affect the question of the correctness of the ruling upon the objection. If the witness went too far, the remedy was by motion to strike out that portion of his answer.

It is claimed that the court erred in admitting copies of the account current and the money-order account of Hibbs with the post-office department. These copies were transcripts from the books of account of the department, duly authenticated, under the seal of the treasury department, and were competent evidence. Objection was made to their introduction upon the ground that the defendants had made demand for copies thereof by notice served upon counsel for the United States, and that no copies had been furnished; also upon the ground that the action was brought upon forged money orders, and no copies of the forged orders had been set forth in the complaint. The objections were overruled on the trial, upon the grounds, as stated in the bill of exceptions, (1) that the suit was one upon a bond, and not upon account, and that, therefore, the items of the accounts could not be required, under the provisions of section 4209 of the Revised Laws of Idaho, (St. 1887;) (2) that it nowhere appeared in the case that such demand for copies had been duly signed by an attorney of record in the suit or served upon the counsel of the United States; (3) that it does not appear that the suit was brought upon forged money orders. There is nothing contained in the bill of exceptions to contravene these statements of the trial judge, and the reasons so stated for overruling the objections were amply sufficient.

It is assigned as error that the court sustained objections to questions propounded to one of the defendants, by which the defendant sought to adduce testimony tending to prove that certain moneys had been paid by the sureties, or through their instrumentality, to the government, on account of Hibb's liability after his removal from office. This evidence was properly excluded. Section 951 of the Revised Statutes clearly points out the course to be pursued by a surety claiming a credit:

"In suits brought by the United States against individuals, no credit shall be admitted upon trial except such as appear to have been presented to the accounting officers of the treasury for their examination, and to have been by them disallowed in whole or in part."

There had been no attempt to comply with this statute. The contract of the defendants whereby they became sureties for Hibbs as postmaster was made with reference to the provisions of the law concerning the defenses they might make in case of a breach of the bond, and the evidence they might introduce in aid thereof. The statute just quoted entered into, and became part of, their contract. The rule therein provided was a reasonable one. Its binding force has been recognized by the courts. U. S. v. Gil-

more, 7 Wall. 492. It is contended, however, that section 951 does not apply in this case, for the reason that the evidence so excluded would have proven, not credits, but actual payments of money upon account of the postmaster's liability. We are unable to concede that a distinction exists between a claim for payment in cash and a claim for a credit. When we consider the object of the statute, which evidently was designed to prevent the introduction of evidence to reduce the liability of individuals in cases of this kind until the department should have had an opportunity to examine into the nature of the claim, and reject or allow the same, there is equal reason to apply the statute to payments claimed to have been made in cash as to counterclaims or offsets, and, in the plain meaning of the language employed in the statute, a claim for a credit would include any payment of cash which would reduce the liability of the sureties. The payments which the defendants sought to prove in this instance were evidently those pleaded in their amended and supplemental answer, and consisted of moneys which they alleged had been collected by the United States, and were either taken from the person of Hibbs when he was captured, or were collected from certain banks, all of which, the answer alleges, the defendants are entitled to have applied "as a credit" upon the bond. Here we have the defendants' own construction that these alleged payments were properly defined as "credits."

It is claimed that the court erred in directing the jury to return a verdict for the plaintiff. According to the bill of exceptions, the plaintiff introduced sufficient and competent evidence to prove a shortage in the accounts of Hibbs with the government, largely in excess of the penal sum named in the bond, and a demand upon the sureties for payment. The execution and validity of the bond were admitted in the pleadings. The only evidence introduced by the defendants was testimony to prove, that through the instrumentality of one of the defendants, the government had received large sums of money which had been taken from the person of Hibbs, and collected from certain banks. It was not disputed that, after these sums had been credited upon Hibbs' account, he was still indebted to the United States in a sum exceeding the penalty of the bond. The defendants endeavored to have these sums, so realized through their agency, credited upon their liability on the bond, rather than upon the general account of Hibbs. This was a question of law, and was properly disposed of by the court. The result was that there was no evidence whatever to go to the jury in behalf of the defendants, and there was no error in instructing the jury to return a verdict for the plaintiff.

The remaining assignment of errors, that the court erred in overruling the motion for a new trial, cannot, for reasons elsewhere stated in this opinion, be considered by this court.

There being no error in the trial below, the judgment is affirmed.