IDAHO IRR. CO., Limited, et al. (DISNEY et al., Interveners) v. GOODING et al. (STATE OF IDAHO, Intervener).

(Circuit Court of Appeals, Ninth Circuit. August 7, 1922. On Appellants' Petition for Rehearing, October 4, 1922. Petition for Rehearing and for Further Modification of the Supplemental Opinion Denied, February 19, 1923.)

No. 3797.

1. Appeal and error ⬅345(2)—Time for taking appeal ran from overruling of petition for rehearing, and not from entry of original decree.

Where petition for rehearing was filed during the term at which the decree was entered, the time within which the appellants were required to take an appeal commenced to run at the time the petition was overruled, and not at the time the original decree was entered.

2. Appeal and error ⬅157—Right to appeal from decree enjoining irrigation company from issuing additional contracts for water rights not waived by transfer of existing water rights after decree.

In an action by owner of land located under Carey Act, § 4, as amended by Act June 11, 1896, § 1 (Comp. St. §§ 4685, 4686), against an irrigation company to which the state had given contract under C. S. Idaho 1919, §§ 2996–3068, to construct irrigation works for the reclamation of the lands segregated by the Secretary of the Interior, to be conveyed to the state for settlement under the Carey Act, to enjoin the irrigation company from making further sales of shares of stock in operating the corporation, and from issuing further contracts for the sale of water rights, on the ground that the irrigation system was not sufficient to supply water to lands in addition to the lands of holders of outstanding contracts, the company and subsequent purchasers did not, on theory of acquiescence in judgment and compliance with its terms, waive their right of appeal from decree enjoining further issuance of contracts, and canceling such subsequent contracts made subsequent to commencement of action by transfer of water rights from uncultivated lands to improved lands subsequent to rendition of decree, where the decree expressly provided that such transfer should not be considered a violation of the injunction.

3. Appeal and error ⬅143—Purchasers of water rights, who were enjoined from receiving water, held entitled to appeal from decree.

Where decree enjoined irrigation company, to which the state had given a contract for the construction of an irrigation system for lands received from the United States for settlement, under Carey Act, § 4, as amended by Act June 11, 1896, § 1 (Comp. St. §§ 4685, 4686), from making further sales of shares in its operating corporation, and canceled shares issued subsequent to commencement of action, purchasers of shares subsequent thereto, who intervened after rendition of original decree without obtaining relief by intervention, and who were enjoined by subsequently amended decree from receiving water, or the irrigation of their lands, held entitled to appeal from such amended decree.

4. Waters and water courses ⬅222—Secretary of the Interior's issuance of patent under Carey Act not conclusive determination as to sufficiency of irrigation system for reclamation of irrigable portion of land conveyed to state.

Secretary of the Interior's issuance of patent to land conveyed to state for reclamation and settlement under Carey Act, § 4, as amended by Act June 11, 1896, § 1 (Comp. St. §§ 4685, 4686), did not constitute a determina-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion as to the sufficiency of the water supply system constructed by the irrigation company under contract with the state for the reclamation of the irrigable portion of such lands, as against owners of lands located under such act who sue to enjoin the company from issuing additional contracts for the sale of water rights to persons who entered on such land, on the ground that the system was not sufficient to irrigate lands other than those owned by holders of outstanding contracts.

5. **Lis pendens ☞26(4)—Court, in enjoining irrigation company from selling additional shares entitling purchasers to water, properly canceled rights acquired by purchasers subsequent to commencement of action, in view of lis pendens notice.**

In action by owners of land located under Carey Act, § 4, as amended by Act June 11, 1896, § 1 (Comp. St. §§ 4685, 4686), against irrigation company, to which the state had given contract for construction of irrigation system for the reclamation of land conveyed to the state for settlement under such act, to enjoin the company from selling additional shares of stock in its operating corporation, entitling the purchasers thereof to water, on the ground that the irrigation system was not sufficient to irrigate lands other than those owned by holders of outstanding contracts, where notice of lis pendens had been filed at the time of the commencement of the action, it was proper for the court, in granting the injunction, to cancel rights acquired by purchasers of shares subsequent to commencement of action under C. S. Idaho 1919, §§ 5325, 6674.

6. **Waters and water courses ☞247(2)—Evidence held to support finding as to the insufficiency of irrigation system for reclamation of land under Carey Act for irrigation of land other than that owned by existing shareholders.**

In action by owners of land located under Carey Act, § 4, as amended by Act June 11, 1896, § 1 (Comp. St. §§ 4685, 4686), against irrigation company, to which state gave contract for construction of irrigation works for reclamation of land conveyed by the United States to the state for settlement under such act, to enjoin the company from selling additional shares of stock in operating corporation entitling purchasers to water, on the ground that the system was insufficient for irrigation of land other than that owned by existing shareholders, evidence *held* to support finding as to insufficiency of system.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action by Fred W. Gooding and others against the Idaho Irrigation Company, Limited, and others, in which Frank T. Disney, the State of Idaho, and others intervene. Decree for plaintiffs, and defendants and interveners other than the State of Idaho, appeal. Affirmed, on condition as stated in opinion on rehearing.

Suit to restrain the Idaho Irrigation Company, the Equitable Trust Company of New York, and Lyman Rhoades, as trustees for the bondholders of the Idaho Irrigation Company, and M. R. Kayes, as trustee, holding legal title to certain shares of stock in the Big Wood River Reservoir & Canal Company, from making further sales of shares of stock in that company, and from issuing further contracts for the sale of water rights. The state of Idaho, intervener, joins in asking that the prayer of plaintiff's complaint be granted. Decree for plaintiffs. Defendants appeal.

Walters & Hodgin, of Twin Falls, Idaho, for appellant Idaho Irr. Co., Limited.

Richards & Haga, of Boise, Idaho, and Murray, Prentice & Aldrich, of New York City, for appellants Equitable Trust Co. of New York, Lyman Rhoades, and M. R. Kayes.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Richards & Haga, of Boise, Idaho, and E. D. Reynolds, of Jerome, Idaho, for appellants interveners Disney and others.

W. G. Bissell, W. T. Stafford, and Branch Bird, all of Gooding, Idaho, W. L. Dunn, of Oakley, Idaho, and Karl Paine, Roy L. Black, and Dean Driscoll, all of Boise, Idaho, for appellees.

Before ROSS, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. This is another controversy growing out of the system of reclamation of desert land in certain public land states provided by the Act of August 18, 1894, known as the Carey Act (28 Stat. 372, 422), as amended by the Act of June 11, 1896 (29 Stat. 413, 434 [Comp. St. §§ 4685, 4686]). The public lands involved in this case are located in the state of Idaho, and the statutes of that state relating to the appropriation of water for the co-operating scheme in reclaiming the desert lands of the state are found in sections 1613 to 1634 of the Revised Codes of Idaho of 1908 (Compiled Stats. of Idaho 1919, cc. 136 to 140, §§ 2996–3068). The plaintiffs are owners of 4,596 acres of lands located under the Carey Act and embraced within the segregated area of the Idaho Irrigation Company, with an equal number of shares of stock in the Big Wood River Reservoir & Canal Company. The latter company is the operating company mentioned in certain contracts between the state of Idaho and the irrigation company and contracts between the Idaho Irrigation Company and the purchasers of lands within the segregated area. It is alleged in the complaint that the plaintiffs, together with all other settlers upon the project of the Idaho Irrigation Company, are interested in the outcome of this suit.

This case, like many others of the same general character, presents questions difficult of adjustment in the administration of the desert land laws for different localities, giving rise to controversies between the parties, to determine the just and equitable rights of each. If there is a failure in this respect anywhere in the procedure, it is not necessarily because of lack of good faith in the conduct of the parties, or lack of careful investigation on the part of the officials; but it is rather by reason of the diverse conditions under which desert lands can be reclaimed in the different localities of the desert region. The experience of one locality in administering the law may be wholly inapplicable in another, requiring a new adjustment of rights and duties with respect to the new and unexpected conditions.

The appellant the Idaho Irrigation Company, a defendant in this suit, is a corporation organized under the laws of the state of Idaho, and by its articles of incorporation authorized to engage in various enterprises, including that of the construction of irrigation works, buying and selling water rights, and the operation of water systems. In 1906 the defendant made proposals to the executive officers of the state of Idaho, through the state board of land commissioners, for the purpose of forming a project to construct irrigation works for the reclamation of certain desert lands in the state of Idaho, under the terms of the Carey Act and the laws of the state of Idaho, accepting the conditions of the Carey Act and providing for the appropriation of water for the reclamation of such lands. In accordance with these proposals, the state board of land

commissioners on August 15, 1907, resolved to enter into a contract with the defendant for the construction of the irrigation works mentioned in the proposals, and on August 21, 1907, the state did enter into such contract for the reclamation of public lands described in certain lists filed with the state board of land commissioners as follows: April 2, 1907, 40,821.31 acres; May 14, 1907, 1,440.85 acres; May 16, 1907, 12,436.41 acres; July 8, 1907, 55,018.60 acres. These lands, designated for segregation by the Secretary of the Interior for and on behalf of the United States, aggregated 109,717.17 acres. In a subsequent list, filed December 9, 1909, there was a further addition to the project of reclaiming desert lands aggregating 50,297.07 acres, and on February 3, 1910, there was a still further selection of land, aggregating 7,743.17 acres, making a total of 167,757.41 acres of land, segregated by the Secretary of the Interior for the project.

The contracts entered into between the defendant and the state of Idaho provided a number of conditions incident to such contracts, among others that the defendant would construct a dam, reservoir, and irrigation system, as described in the contracts, and would sell shares of water rights in said reservoir and irrigation system from time to time to persons filing upon portions of the lands under the Carey Act and described and referred to in the contracts. The original cost of the proposed works was estimated at $2,000,000; an additional cost for the enlargement provided in the supplemental agreement was estimated at $650,000; and the estimated cost of the proposed enlarged irrigation works was increased to $3,000,000. It was recited in the original contract that it was understood that the defendant was the owner of a right to divert from Big Wood river and Malad river 3,000 cubic feet of water per second of time under a permit, numbered 1817, issued by the state engineer of Idaho. In the supplemental agreement, it was recited that it was understood that the defendant was the owner of an additional right to divert from Big Wood and Malad rivers 3,000 cubic feet of water per second of time under a second permit, numbered 3818, issued by the state engineer of Idaho. In both agreements it was provided that the defendant agreed to furnish and deliver to owners of shares in said reservoir and irrigation system, as specified in the other provisions of the contract, all of said appropriated waters to which the said defendant was entitled to the extent of one-eightieth of one cubic foot per second of time per acre. It was also provided that, as soon as the lands were ordered thrown open for settlement, a corporation, known as the Big Wood River Reservoir & Canal Company would be formed at the expense of the defendant; the articles of incorporation to be in a form to be provided by the Attorney General of the state; the authorized capital stock of the corporation should be 125,000 shares, which amount was intended to represent one share for each acre of land which might be irrigated from said canal.

In the supplemental contract, the capital stock of the corporation was to be 150,000 shares. It was further provided that the certificates of shares in the corporation should be made to indicate and define the interest thereby represented in said system, to wit, a water right of one-eightieth cubic feet per second for each acre, and the proportion in

said reservoir and irrigation system based upon the number of shares ultimately sold purchasers. It was also provided that the defendant would sell, or cause to be sold, to the person or persons filing upon any of the land described in the contract susceptible of irrigation, a water right or share in said canal for each and every acre filed upon or purchased from the state, or acquired from the United States, but in no case should water rights or shares be dedicated to any of the lands mentioned, or sold beyond the carrying capacity of the said canal system, or in excess of the appropriation of water, as mentioned in the contract. It was further provided that the defendant would prosecute the work in said reservoir and irrigation system diligently, and continue to do so, and would supply water to the lands by certain dates mentioned, and would complete the entire irrigation works within five years from the date of the original agreement, which was on or before August 21, 1912, at which last-mentioned date the obligation to furnish the full one-eightieth of a cubic foot of water per second of time per acre should be in full force and effect. It was further provided that the lands referred to in the contracts were donated by the act of Congress to the state of Idaho under the Carey Act, for the irrigation and reclamation of which lands the contracts were designed to affect. The form of an agreement was provided to be entered into between the Idaho Irrigation Company, the defendant herein, and the purchaser of stock in the Big Wood River Reservoir & Canal Company, the operating company formed by the defendant for the purpose of carrying into effect its contract with the state.

Pursuant to these agreements, the Secretary of the Interior, for and on behalf of the United States, entered into an agreement with the Governor of the state of Idaho, for and on behalf of the state of Idaho, providing that the Secretary of the Interior would bind the United States to donate, grant, and patent to said state, or to its assigns, any particular tract or tracts of said land whenever an ample supply of water should be actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim the same, in accordance with the provisions of the acts of Congress, and with the regulations issued thereunder, and with the terms of the contract. The act of Congress referred to expressly declared that its purpose was to aid the public land states in the reclamation of desert lands therein, and in the settlement, cultivation, and sale thereof in small amounts to actual settlers. To carry this purpose into effect, it was provided, among other things, that before the application of any such state was allowed, or any contract was executed, or any segregation of any of the desert lands from the public domain was ordered by the Secretary of the Interior, such state should file a map of the land proposed to be irrigated, together with a plan showing the mode of the contemplated irrigation, which plan should be sufficient to thoroughly irrigate and reclaim said desert lands and prepare same to raise ordinary agricultural crops, and also show the source of the water to be used for its irrigation and reclamation.

Thereafter the defendant proceeded to construct an irrigation system and to sell and contract to sell water rights to the various settlers, among

whom are the plaintiffs in this case. In January, 1912, the state of Idaho made application to the Secretary of the Interior for a patent to the lands included in the Idaho irrigation project, submitting proof of water supply and its appropriation by the state for the lands to be irrigated. The state engineer certified that, in his opinion, an ample supply of water for the reclamation of all these lands was actually furnished in a substantial reservoir and canal, and in a sufficient quantity to reclaim the lands in question from their arid character, as contemplated in the Carey Act, and that the state of Idaho was warranted in making the application to the Secretary of the Interior, asking that a patent issue forthwith for the lands embraced in the accompanying lists. Such proceedings were thereupon had in the Department of the Interior that the area of the project was fixed at 117,677.24 acres, and on February 19, 1915, the patent of the United States was issued therefor and delivered to the state of Idaho. It was provided in the patent that the grant was made to the state for the purposes specified in the Carey Act, as amended, and subject to all the conditions, restrictions, and limitations therein prescribed, and with power to convey the same in fee simple in accordance with the provisions of said act.

On December 7, 1917, the plaintiffs commenced this suit in the district court of the state, which, upon a proper showing, was removed to the United States District Court for the District of Idaho. The complaint sets forth the organization of the defendant and its irrigation system, the organization of the Big Wood River Reservoir & Canal Company as the operating company for the defendant, the sale to settlers of water rights to be used for the reclamation and irrigation of lands within the segregated area, and evidenced by shares of stock in the latter company. It was alleged in the complaint that the contract hereinbefore referred to provided that the said defendant should sell water rights of one-eightieth of one cubic foot per second of time per acre for the irrigation and reclamation of said land, and that it should construct irrigation works of such capacity as to be able, in fact, to deliver and furnish one-eightieth of one cubic foot per second of time per acre of land for each acre of land within said segregation; that the certificates of stock in the Big Wood River Reservoir & Canal Company should entitle the purchaser thereof to receive one-eightieth of a cubic foot of water per second of time per acre, and a proportionate interest in the irrigation works and system.

It was further alleged that the contract limited the rights of the defendant to the sale of a number of shares of capital stock in the Big Wood River Reservoir & Canal Company to the capacity of the system to furnish and distribute water in accordance with the contract, and to the actual appropriation of water available for irrigation purposes, and that under and by virtue of the terms of the said contracts, when the defendant had in fact sold shares in said company, such shares would represent the actual amount of water available and appropriated, and when said sale of shares should equal the carrying capacity of said irrigation system, then and in that instance the defendant would make no further sales of water rights by means of selling and issuing shares of stock in said Big Wood River Reservoir & Canal Company. These allegations of the complaint were admitted in defendant's answer. It

was further alleged in the complaint that said land required the application thereto of at least five-eighths of a cubic inch of water per acre per second of time, or one-eightieth of one cubic foot of water per second of time for each acre during the irrigation season, for the successful irrigation and reclamation and cultivation thereof, and for the raising of ordinary agricultural crops thereon, and that with a less amount of water than said one-eightieth of one cubic foot per second of time per acre of land during the irrigation season such lands were worthless and valueless for agricultural purposes and for the purpose of raising ordinary agricultural crops.

In an amendment to paragraph 20 of the complaint, allowed by the court, it was alleged that the total available water supply of the defendant, actually existing, actually appropriated, and available for distribution to the contract holders on lands in said project at the headgate of the contract holders was 122,817 acre feet, which said amount of water would, at the contract rate of five-eighths of a miner's inch per acre during the statutory irrigation season, furnish and supply water for the irrigation of 40,939 acres, and no more; that is to say, that the irrigation and cultivation of 40,939 acres and the application thereto of one-eightieth of one cubic foot of water per second of time per acre of land for the statutory irrigation season, beginning April 1st and ending October 31st, would exhaust the entire appropriation and available water supply of the defendant.

The defendant, in its answer, averred that it had sold water rights to the total amount of approximately 87,233.76 shares; that there remained unsold, within said segregated area, and susceptible of irrigation from said system, a total acreage of approximately 25,638 acres, and that the total supply of water appropriated and available for distribution to said system was sufficient to enable defendants to furnish and deliver an ample supply of water to all the lands then remaining in the segregation. The defendant set up a further defense that the proceedings before the Land Office at Washington and the Secretary of the Interior on the issuance of a patent by the United States for 117,677.24 acres constituted a determination by the state of Idaho and the Secretary of the Interior of the water supply of the defendant and of the capacity of the irrigation works constructed by the defendant, and that such determination was conclusive and binding upon the court.

Upon the filing of the complaint in this action, a lis pendens was also filed for record with the recorders of the counties in which the property is situated. The object of the suit was alleged to be to restrain the defendants from selling, disposing of, or transferring upon the books of the company any of the shares of the capital stock of the Big Wood River Reservoir & Canal Company, which they then held as assets of the Idaho Irrigation Company, and as trustees for the benefit of the bondholders of said corporation, and that the defendant, and all persons acting for it, its agents, officers, and employees, be permanently enjoined and restrained from issuing any more or further contracts for the sale of water rights, or from selling, disposing of, or transferring any of the shares of the Big Wood River Reservoir & Canal Company which it now owns or controls.

The case was tried by the court upon testimony of witnesses taken orally in open court, as provided by equity rule No. 46, and upon the evidence furnished by charts and other exhibits introduced in evidence relating to the water supply and distribution, furnished by the defendant and distributed to the lands included in the project. The evidence is conflicting as to the amount of water required during the irrigation season for the successful irrigation, reclamation, and cultivation of the lands included in the project. Upon the conclusion of the testimony, the court entered an order reciting:

"Whereupon, with the approval of the court, it was stipulated and agreed that the pleadings may be deemed amended to conform to the proof."

The evidence is stated under equity rule No. 75, providing for a condensed record of the trial. An examination of the evidence contained in the record shows that the proof on the part of the plaintiff conforms substantially to the plaintiffs' amendment to paragraph 20 of the complaint, heretofore referred to. The opinion and decree of the court follows this amendment to plaintiffs' complaint, holding that the defendant's average available water resources from 1911 to 1919 were 122,817 acre feet, and that the reservoir on July 19, 1920 (the date of the opinion and decree), was then empty; but the court held in its opinion that it was not necessary to find, and hence it did not attempt to determine, the exact amount of water available for defendant's use. "It was sufficient," the court said, "to know that, with the duty hereinbefore recognized, the supply is, and will be, insufficient to meet the demands of the outstanding contracts, exclusive of those involved in this suit, and I have no hesitation in so finding."

The prayer of the complaint was thereupon granted, and a decree entered, enjoining the defendant from selling, transferring, or otherwise disposing of any of the shares of the capital stock of the Big Wood River Reservoir & Canal Company, which they, or any of them, held as assets of the defendant company at the date of the commencement of this suit on December 7, 1917, or which had been acquired by them, or any of them, since that date. And the defendant the Idaho Irrigation Company, its agents and employees, were perpetually enjoined and restrained from selling, transferring, or otherwise disposing of water rights owned, held, or controlled by it at the date of the commencement of this suit, or acquired since said date, in the irrigation system contracts for the sale thereof; that all water rights sold by the defendants, or any of them, in said irrigation system, and all contracts for the sale of water rights issued by defendants, or any of them, for the irrigation of certain lands described, were decreed to be of no effect, and all shares of the capital stock of the Big Wood River Reservoir & Canal Company, issued in connection with such sales, or the issuance of such contracts, were declared to be of no effect. Other provisions of the decree are not material to the questions presented to this court.

The defendants have appealed from this decree, and the plaintiffs have interposed a motion for the dismissal of the appeal, on the ground that the court was without jurisdiction, for the reason that the appeal was not taken in time, and for the further reason that, after the entry of the decree, the defendants and certain interveners recognized the

validity of the decree, acted under it, and acquiesced in its terms, defendants accepting benefits thereunder, and that the interveners have no right of appeal from the original decree.

[1] The final decree was entered December 20, 1920. The defendants filed a petition for a rehearing February 12, 1921, within the term in which the decree was entered. The petition was entertained by the court and on May 7, 1921, the court made and entered an order overruling and denying defendant's petition for a rehearing after having amended the decree in certain particulars. The appeal was taken August 12, 1921, within six months after the denial of the motion for rehearing.

In Aspen Mining & Smelting Co. v. Billings, 150 U. S. 31–36, 14 Sup. Ct. 4–6, 37 L. Ed. 986, the court said:

"The rule is that, if a motion or a petition for rehearing is made or presented in season and entertained by the court, the time limited for a writ of error or appeal does not begin to run until the motion or petition is disposed of. Until then the judgment or decree does not take final effect for the purposes of the writ of error or appeal. * * * If this petition for rehearing was filed in season and entertained by the court, then the decree, although entered in form, did not discharge the parties from their attendance in the cause, and they were bound to follow the petition thus pending to the next term. The suit was thereby prolonged until the application was disposed of in the regular course of proceeding."

In Alexander v. United States, 57 Fed. 828, 831, 6 C. C. A. 602, this court said:

"In Brockett v. Brockett, 2 How. 238, it was held that a petition for a rehearing, filed during the term, and actually entertained by the court, suspended the operation of a decree in equity until the petition was disposed of."

The court cites other cases to the same effect. The appeal in the present case was taken in time, and this court has jurisdiction to review the proceedings.

[2] It is contended by the plaintiffs that the defendants and certain interveners have deprived themselves of the right of appeal by recognizing the validity of the decree, acting under it, and acquiescing in its terms. This contention is based upon the fact that the defendants and certain interveners have participated in the transfer of water rights from lands entitled to water under the decree to lands that are excluded from the project by the decree. The right to make such transfers, it is claimed, is authorized by chapter 139 of the Idaho Compiled Statutes of 1919, providing for the transfer of a water right appurtenant to land entered under the Carey Act, and a paragraph of the decree providing:

"That it shall not be considered a violation of the injunction herein issued if the Idaho Irrigation Company transfers shares of stock appurtenant to land now entitled to receive water to any land described in this decree, such transfer to be made upon a basis of acre for acre and share for share, and the total burden on the system being not thereby increased."

The reason given for the transfers is that they were made to protect growing crops during the appeal; that the interveners were forced to either suffer great loss during the pendency of the appeal, or secure a transfer of water rights from uncultivated lands to lands that had been improved; that such transfers did not increase the total burden of water

delivery upon the system, and did not, in any way, act as a waiver of their right of appeal upon the question whether or not the defendant the Irrigation Company had sold shares of water stock in the Big Wood River Reservoir & Canal Company equal to or in excess of the carrying capacity of the defendant's irrigation system, and that the further sales of water rights should be enjoined. The right to transfer a water right from one tract of land to another under the state statute is no part of this controversy; but, assuming that it is, in our opinion the rule referred to was not intended to control such a proceeding as the one with which we are now dealing. Erwin v. Lowry, 7 How. (48 U. S.) 173, 184, 12 L. Ed. 655; Embry v. Palmer, 107 U. S. 3, 2 Sup. Ct. 25, 27 L. Ed. 346; Reynes v. Dumont, 130 U. S. 354, 394, 9 Sup. Ct. 486, 32 L. Ed. 934. We are of the opinion that neither the defendants nor the interveners waived their right of appeal in this proceeding.

[3] It is objected that the interveners are not proper appellants, and have no right to appeal from the decree entered December 20, 1920. This appeal is, however, from the decree as amended May 7, 1921. The interveners, in their complaint filed by leave of the court February 12, 1921, and in their amended complaint filed March 21, 1921, alleged that they had no actual knowledge of the filing of the lis pendens by the plaintiff at the commencement of the suit, or of the nature or scope of the suit as determined by the decree of December 20, 1920; that they at all times understood and assumed that the suit was for the purpose of enjoining the defendants from selling any of the unissued stock of the Big Wood River Reservoir & Canal Company, and the interveners alleged that they did not know or understand that the suit involved the cancellation of any stock or water rights theretofore issued by that corporation and made appurtenant to the land of the interveners; that no preliminary or temporary injunction or restraining order had been issued, enjoining or restraining the defendants from selling any of the shares of stock or water rights or land owned by the defendants; that the decree of December 20, 1920, seriously affected the rights of the interveners, although they were not parties to that suit; that the decree purported to cancel and annul all contracts for the sale of water rights issued by the defendants for the lands owned by various persons who were not parties to suit, and who were situated substantially as the interveners.

On March 31, 1921, plaintiffs moved the court to strike out certain portions of the complaint in intervention, from which it appears that it was conceded by the plaintiffs' that under a proviso of the decree of December 20, 1920, certain lands described should be eliminated from the' list of lands specifically described in the decree, and it was so ordered. The plaintiffs, at the same time, filed a motion to strike out, or dismiss, all the remaining paragraphs of the complaint in intervention, with two exceptions. On April 6, 1921, the court entered an order denying relief to the interveners, and thereafter, on May 7, 1921, the court entered its amended decree.

The decree, as amended and entered by the court on May 7, 1921, enjoined the interveners from receiving any water for the irrigation of their lands described in their complaint in intervention. Their title to

water rights claimed by them was adjudicated and canceled by the decree. This title to water was an interest in property, the use and enjoyment of which they were deprived of by the decree. We think these facts entitled the interveners to appeal to this court.

The remaining questions are upon the merits. The controlling question is this: Had the defendant the Idaho Irrigation Company, on December 7, 1917, when this suit was commenced and lis pendens filed, sold shares of water stock in the Big Wood River Reservoir & Canal Company, representing in the aggregate the full amount of water available and appropriated for the reclamation of the desert lands in the Idaho Irrigation project, in which the plaintiffs were purchasers? The contract between the defendant the Idaho Irrigation Company and the state of Idaho, and between the defendant the Idaho Irrigation Company and the plaintiffs, was that it would sell water stock of one-eightieth of one cubic foot per second of time per acre for the irrigation and reclamation of said land, and that it would construct irrigation works of such capacity as to be able in fact to deliver and furnish one-eightieth of one cubic foot of water per second of time per acre of land for each acre of land within the project.

It was alleged in the complaint, and admitted by the defendants at the trial, that said irrigation contract limited the rights of the said Idaho Irrigation Company to the sale of a number of the shares of the capital stock of the said Big Wood River Reservoir & Canal Company to the capacity of the system to furnish and distribute water in accordance with the contract, and to the actual appropriation of water available for irrigation purposes; that under and by virtue of the terms of the said contract, when the said Idaho Irrigation Company had, in truth and in fact, sold shares in said company, which should and did represent the actual amount of water available and appropriated, and when said sale of shares should equal the carrying capacity of said irrigation system, then, and in that instance, the said irrigation company should make no further sales of alleged water rights by means of selling and issuing shares of stock in said Big Wood River Reservoir & Canal Company.

The United States owned the desert lands, and the state owned the water. Twin Falls Salmon River Land & W. Co. v. Caldwell, 242 Fed. 177, 183, 155 C. C. A. 17. The object of the legislation enacted by Congress and by the Legislature of the state in that behalf was to enable settlers to occupy, thoroughly irrigate, and reclaim the desert lands for agricultural purposes. The plaintiffs individually entered into contracts with the defendant the Idaho Irrigation Company, under the provisions of these statutes, to purchase a certain number of shares of stock of the Big Wood River Reservoir & Canal Company, organized to appropriate the waters of the state in sufficient quantity for distribution to settlers to irrigate lands included in the project. A share of stock in the operating company was a water right in said company for each and every acre filed upon or purchased from the state, or acquired from the United States; each share or water right representing a share in the carrying capacity in the operating companies' canal sufficient to deliver water at the rate of one-eightieth of one cubic foot per acre per second of time for irrigation and for domestic uses of the tract of land described in the contract.

To carry this project into effect, the United States, on February 19, 1915, issued its patent to the state of Idaho for 117,677.64 acres of desert lands. It was provided in the patent that the lands were granted for reclamation, upon the conditions, restrictions, and limitations of the Carey Act of 1894 and its amendments. The Legislature of the state of Idaho, by an act dated March 9, 1895, accepted the conditions of the Carey Act, and provided, among other things, that the selection, management, and disposal of said land should be vested in the state board of land commissioners. Laws of 'Idaho 1895, p. 219; section 1613, Rev. Codes of Idaho 1908; section 2996, Compiled Statutes of Idaho 1919. It was further provided by the Act of March 9, 1895 (Laws 1895, p. 220) that upon the withdrawal of the land by the Department of the Interior it should be the duty of the board of land commissioners to enter into contracts with parties submitting proposals for the construction of irrigation works. By the Act of February 19, 1919 (Laws of Idaho 1919, pp. 65 and 67), the powers and duties of the state board of land commissioners were transferred to the department of reclamation (created by the act), so far as their duties related to the administration of the Carey Act (Compiled Stats. of Idaho 1919, § 350). It was further provided by the Act of March 17, 1919 (Laws of Idaho, p. 247) that:

"Should it appear at any time, in the judgment of the department of reclamation, that the water supply of the party or parties with which such contract had been made, is inadequate to properly and sufficiently irrigate the lands so proposed in said contract to be irrigated, or that water rights have been sold to the full carrying capacity of the proposed ditch, canal or other irrigation works, or that water rights have been sold by said party or parties to the full amount or in excess of the actual appropriation of water made by said party or parties or to the full amount or in excess of the supply of water made actually available by said parties, then in that event the department of reclamation shall have the right to enter an order forbidding said parties from making any further or additional sales of water rights or of shares of stock in any company representing or evidencing water rights, and after the entry of such order all further or additional sales of such water or water rights, shares of stock and contracts to sell the same made by said party or parties shall be null and void, and said department of 'reclamation shall have the power to refuse to issue entrymen's certificates thereon.

"Sec. 2. This act shall apply to contracts heretofore made, as well as contracts hereafter to be made by the Department."

Compiled Stats. of Idaho 1919, § 3004.

Pursuant to this statute, the department of reclamation, by its commissioner, entered an order on June 2, 1919, declaring that, in his judgment, the water supply of the said Idaho Irrigation Company was not adequate to properly or sufficiently irrigate, reclaim, or cultivate more of the land proposed in the contracts that had been made between the Idaho Irrigation Company and the settlers on the lands to be irrigated, and which had already been entered and sold. The commissioner thereupon entered an order forbidding the Idaho Irrigation Company from making any further or additional sales of water rights or of shares of stock, representing or evidencing water rights, or entering into any further contract or contracts for the sale of water rights for lands to be watered from the system or irrigation works of the said Idaho Irrigation Company. Thereafter this order was approved by the state board

of land commissioners, and has continued to remain in full force and effect.

Thereupon the state of Idaho, by its Governor and Attorney General, intervened in this suit, joining the plaintiffs in their prayer that further sale of water rights by the defendants should be enjoined and restrained, and from making any further or additional sales of water rights or of shares of stock representing or evidencing water rights or entering into any further contract or contracts for the sale of water rights for the lands to be watered from the system or the irrigation works of the said Idaho Irrigation Company, and that plaintiffs' complaint be granted.

Upon the trial of the case it was stipulated that the total outstanding number of shares of the Big Wood River Reservoir & Canal Company were 88,835.71. This number of shares of stock, under the contract between the parties, represented 88,835.71 acres of land filed upon or purchased from the state, or acquired from the United States by the settlers. The contracts entitled the owner of each share of stock to receive one-eightieth of one cubic foot of water per second of time per acre of land for the irrigation of and for domestic uses of such settlers. The statutory period for irrigation in the state of Idaho is from April 1st to November 1st of each year. The equivalent of one-eightieth of one cubic foot of water per second of time per acre of land for the statutory period is approximately 5½ acre feet. We find no evidence in the record that such amount of water had been delivered to the settlers by the defendant or the operating company, the Big Wood River Reservoir & Canal Company.

The defendants introduced in evidence three statements, taken from the records of the Idaho Irrigation Company, showing (1) the acre feet of water delivered at main canal heads of the project for the years 1911 to 1919; (2) the acre feet of water delivered at the farmers' headgates; (3) the acreage in cultivation, for the same years; to which is added (4) by calculation the average acre feet of water delivered each year, as follows:

| Year. | (1) Main Canal Heads. | (2) Farmers' Headgates. | (3) Acreage in Cultivation. | (4) Acre Feet. |
|---|---|---|---|---|
| 1911 | 180,226 | 78,925 | 17,464 | 4,519 |
| 1912 | 204,065 | 102,569 | 23,068 | 4,446 |
| 1913 | 229,548 | 123,473 | 25,755 | 4,794 |
| 1914 | 210,239 | 139,106 | 31,205 | 4,457 |
| 1915 | 126,945 | 87,561 | 33,477 | 2,615 |
| 1916 | 285,076 | 170,769 | 36,621 | 4,663 |
| 1917 | 251,046 | 170,968 | 39,121 | 4,370 |
| 1918 | 215,903 | 123,007 | 45,044 | 2,730 |
| 1919 | 178,232 | 109,273 | 56,864 | 1,921 |
| Total | 1,881,280 | 1,105,651 | 308,619 | 34,515 |
| Average | 209,031 | 122,850 | 34,291 | 3,835 |

The difference between the acre feet of water delivered at the main canal heads and the acre feet of water delivered at the farmers' head-

285 F.—30

gates was the loss sustained by evaporation, percolation, and wastage in transmission to the farmers' headgates.

Attention is called to the fact that we are dealing with water rights for land entered under the Carey Act. It is important to bear this fact in mind, for the reason that there are other lands entitled to receive water from the same sources of supply as the lands under the Carey Act. These other lands are referred to in the testimony as "old rights," and are such lands as school lands, desert lands taken up under the Desert Land Act of 1877 (Comp. St. §§ 4674–4678), homestead lands, etc., and lands whose rights have been adjudged by decrees of court. It appears from Exhibit No. 11 in this case that these other lands with prior rights aggregated 19,728.57 acres. Whether the water rights for these lands are included in part in the aggregate water rights of the water delivered at the main canal heads is not clear; but, if they are, it will account for part of the loss of water before it is delivered at the farmers' headgates. Further than this, they are unimportant, and, whatever their relation to the present project is, they cannot change the general result.

But the question to be determined here is not whether the water delivered to the farmers' headgates was sufficient to irrigate the land in cultivation during the previous years—the average of which was 34,291 acres, the equivalent approximately of 3,835 acre feet per acre—but whether the available water supply for the project is sufficient to irrigate as much as, or more than, approximately 88,835.71 acres, the acreage represented by the outstanding number of shares of the water supply project. For such acreage the present water supply delivered at the farmers' headgates, averaging 122,850 acre feet, would be for the season 1.38 acre feet per acre.

The evidence submitted by the defendants tends to establish the fact that, not only has the water supply for this project been exhausted by the sales of shares already sold of water stock, but that the available water supply has been very much oversold. The court below stated this question in the following terms:

"Whether the defendant has oversold water rights, therefore, involves two inquiries: What is the reasonable duty of water; that is, considering the project as a whole, how much water per acre is reasonably necessary for the season? Or, putting it in another way, what length of time in the aggregate, during a season, must the farmer receive water at the rate of one-eightieth cubic foot per second per acre, to properly irrigate his land? And, second, how much water, measured at the farmers' headgates, can the system deliver at such times as it is needed during the season?"

In considering this question, the court found, as we have in reading the record, that but little assistance can be derived from expert opinions; the court stating that such evidence was to be weighed in the light of the data upon which the conclusions rest, and was to be considered together with the experience of the intelligent farmer and the facts of actual irrigation practice. Whether the unsatisfactory character of the expert testimony, as we have it before us in the printed record, arises in part from condensation or lack of proper arrangement and accurate classification of data, we cannot say; but it has failed in important particulars to make itself clear or convincing.

We are therefore following in the main the stipulations of the parties, the exhibits taken from the defendant's records, and the findings of the District Court as to the character of the land and topography of the country embraced in the project. The court describes the land, its texture and uses, as follows:

"Clearly the conditions upon the project are not favorable to a high duty of water. In point of topography, the lands are comparatively rough, and in many places reefs of rock project above the surface. As a consequence the surface run-off is necessarily above normal. And there is also greater loss in transmission, owing to the increased length of service ditches on the farm. The soil is of very uneven depth, and as a consequence the unavoidable loss from deep percolation is above normal, and this loss cannot be recovered, because the water escapes through a substratum of fractured rock to unknown depths. On portions of the tract the soil is of fair texture; upon others, it is coarse and sandy. The rainfall is almost negligible, and high winds prevail. It is altogether probable that approximately two-thirds of the acreage will ultimately be devoted to the raising of hay and root crops, requiring larger amounts of water, and one-third to grains, requiring smaller amounts. Under present conditions, three acre feet, delivered at the times when same is needed, is probably sufficient, but not more than sufficient, on the average, for land actually irrigated. It is to be expected that as time goes on service ditches will be improved and land will be leveled and put into more favorable condition for the economic application of water and naturally the duty of water increases to some extent with cultivations of the land. My conclusion is that the project should have for its proper irrigation permanently an amount of water measured at the farmer's headgates equivalent to 2¾ acre feet per acre for the entire area, without deductions for roads or other nonirrigable tracts."

On that basis, 122,850 acre feet of water, distributed to the farmers at the rate of 2¾ acre feet per acre, would irrigate 44,672 acres, instead of 88,355.71 acres. It is needless to say that exact calculation for such a project is impossible. A careful and critical examination of the record in this case shows that only approximate results can be reached, and upon such results our judgment must be based.

[4] The defendants approach this question from a different angle. They contend that the Secretary of the Interior, when he issued a patent to the state, determined, as a matter of fact, that the water supply was sufficient for the reclamation of the irrigable portion of the 117,-677.24 acres of land conveyed to the state, and that such determination binds this court in this case. We cannot accept that view of the law as applicable to this controversy. This suit is upon a contract between parties. Neither the United States nor the Secretary of the Interior is a party to this action. It is true the state of Idaho, the trustee of the tract of land conveyed by the Secretary of the Interior, is an intervener. But the state is here, not in support of the defendant's claim that the Secretary of the Interior has determined that the available water supply, as now ascertained, is sufficient for the whole tract; nor is it here even as a neutral. On the contrary, the state is here to say, and to urge upon the court that the available supply of water, as now ascertained, is not sufficient, and that further sales of water rights for the project should be enjoined.

This action of the state does not aid us in determining the legal question now under consideration, nor does it determine for this court the fact that the outstanding issue of water stock of the Big Wood River

Reservoir & Canal Company has exhausted the available water supply for this project; but it tends to prove that fact, and is persuasive official action on the part of the state that the authority and jurisdiction of the Secretary of the Interior should not be extended by the court to questions not clearly and distinctly within his administrative authority and jurisdiction. In effect, the state agrees with this court in Twin Falls Oakley Land & Water Co. v. Martens, 271 Fed. 428, 433, where this court, speaking through Judge Hunt, said:

"We believe that, in a proceeding to ascertain whether patents should issue, the finding by the Land Department upon the question whether the water supply is ample is conclusive for the purpose of issuing patent; but that is far from ruling that it is conclusive upon the question whether the plaintiff construction company has provided water at the rate of 1.5 acre feet per acre as required by its contract with the settler. That is a matter which the Land Department has not undertaken to pass upon, and could not."

We see no reason for changing our opinion on that question.

The remaining question relates to that part of the decree dealing with a number of shares of the Big Wood River Reservoir & Canal Company included in the total outstanding shares of its water stock. In the stipulation between the parties, fixing the number of such shares at 88,835.71, it was further stipulated that of this number of shares the Idaho Irrigation Company owned and controlled 12,722.64 shares; that included in this last number of shares there were 3,143.61 shares sold and resold to the interveners, Frank T. Disney and others, since the commencement of this action, and the filing of lis pendens, and that such sales were made by the trustees, parties defendant to this action, with the understanding and the agreement that, in the event of an adverse decision to said defendants in this action, said trustees would make compensation or refund to the purchasers of said shares of stock.

The prayer of plaintiffs' complaint was that the defendants should be permanently enjoined from issuing any new contracts, and also from again disposing of certain rights which had been originally sold to settlers, but had reverted to, or had been re-purchased by the defendants. It is provided in the statutes of Idaho that:

"Real property or real estate consists of: Lands, possessory rights to land, ditch and water rights." Section 5325, Idaho Compiled Stats. 1919.

It is also provided that, "in an action affecting the title or the right of possession of real property," the filing of a lis pendens is constructive notice of the pendency of the action. Section 6674, Idaho Compiled Stats. 1919.

[5] We are of the opinion that, as these shares were issued after the filing of the lis pendens, the court was right in excluding them from the water rights of the project. There were also 4,255.57 shares of stock appurtenant to lands acquired by the Idaho Irrigation Company and its trustees, subsequent to the commencement of suit and the filing of lis pendens. For the same reason, we think the court was right in excluding these shares from the water rights of the project.

The remaining shares of the 12,722.64, namely, 5,322.26, were appurtenant to lands owned by the Idaho Irrigation Company and its trustees when this suit was commenced and lis pendens was filed. These shares are not included in the injunction in this suit, and this

leaves the outstanding water shares of the project approximately 83,-513.45. The available water supply of approximately 122,850 acre feet for the irrigation season, distributed to this number of acres of land, would furnish 1.47 acre feet per acre to a corresponding number of acres, and not 2¾ acre feet, which the District Court ascertained as a fact was the amount of water required to accomplish successful irrigation on this project. But we are not called upon in this suit to reduce the shares of stock of the water project below the actual outstanding shares at the date this suit was commenced, and we do not understand that the District Court, by its decree, undertook to reduce the acres of land in the project to the number of acres for which 2¾ acre feet of water per acre delivered during the irrigation season is required for successful irrigation; but that that was the duty of water on that project, and as that duty could not be performed with the present available water supply, the defendants should be enjoined from selling any more shares of capital stock of the Big Wood River Reservoir & Canal Company which they, or any of them, held as assets in the said Idaho Irrigation Company at the date of commencement of this suit, and from selling, transferring, or otherwise disposing of water rights owned, held, or controlled at the date of the commencement of this suit.

[6] We are of the opinion that the evidence supports the findings contained in the opinion of the court, and that the findings and conclusions of law support the decree. The decree is accordingly affirmed. Costs in this court in favor of the appellees.

## On Appellants' Petition for Rehearing.

In the petition for rehearing, it is stated that the court is in error in assuming that the trial court held that the Irrigation Company was entitled to use and enjoy the water rights appurtenant to 5,322.26 acres of land owned by that company and its trustees when the suit was commenced, and not resold prior to trial of the case.

This may be so. It is not clear, from the descriptions contained in the decree of the District Court, whether these 5,322.26 shares of stock in the Big Wood River Reservoir & Canal Company, appurtenant to lands owned by the Idaho Irrigation Company and its trustees when the suit was commenced and lis pendens filed are, in fact, included in the injunction in this suit, and, as a consequence, whether the water rights for the corresponding 5,322.26 acres of land within the project are thereby canceled and annulled and decreed to be of no effect. If such shares are included in the injunction, the decree should be reversed in that particular; but if, on the other hand, such shares of stock are excluded from the injunction, and the corresponding number of acres of land remain included in the project, then the decree should be affirmed in that respect.

For the purpose of determining this question, the lower court is directed to make a finding upon that question, and enter its decree in accordance with such finding and the opinion of this court. If the decree is amended in accordance with this direction, it will be affirmed, as so amended; otherwise, the decree will stand affirmed as directed in the original opinion.

The petition for rehearing is denied.