[Civ. No. 13141. First Dist., Div. Two. Mar. 20, 1947.]

MERCHANTS' ICE & COLD STORAGE CO. (a Corporation), Respondent, v. GLOBE BREWING COMPANY (a Corporation), et al., Defendants; L. L. SOZZI, Appellant.

Charles Reagh for Appellant.

George M. Naus and Louis H. Brownstone for Respondent.

JONES, J. pro tem.—The action in which this appeal was taken was commenced by the Merchants' Ice & Cold Storage Company to foreclose a chattel mortgage on brewing equipment owned by the Globe Brewing Company. The complaint named as defendants the Globe Brewing Company, two additional corporations, A. J. Scampini, L. L. Sozzi and M. Maffei. On September 20, 1940, Sozzi filed his answer and an unverified cross-complaint alleging fraud, naming as cross-defendants the plaintiff and the other codefendants. Before trial the complaint was dismissed by the plaintiff with prejudice. The cross-complaint was amended a second time, but without change as to the cross-defendants. The cross-defendants, other than the Merchants' Ice & Cold Storage Company, demurred to the second amended cross-complaint, which demurrers were sustained with leave to amend. Sozzi declined to amend a third time, and judgment was entered against him on the demurrers. An appeal was taken from these judgments and the judgments reversed. (*Merchants' Ice & Cold Storage Co.* v. *Globe Brewing Co.*, 73 Cal.App.2d 828 [167 P.2d 503].) The plaintiff Merchants' Ice & Cold Storage Company, however, did not demur to the second amended cross-complaint, but answered. In addition to a general denial of the allegations of fraud, the answer pleads the bar of the statute of limitations. (Code Civ. Proc., § 338, subd. 4.) The case proceeded to trial before a jury, which found for the cross-defendant Merchants' Ice & Cold Storage Company, and from the judgment entered on the verdict Sozzi, the cross-complainant, has appealed.

The appeal is predicated upon the asserted erroneous giving of certain instructions by the trial court, and the refusal of the court to give others.

Turning to the evidence, we find that Sozzi and Scampini first became associated in the reorganization of the Italo Petroleum Corporation. This company was in receivership in the Federal Court in Los Angeles, and in 1931, Sozzi commenced buying its stock on the market at around fifty cents a share. He continued to buy until he had acquired about 3,500 shares. The defendant Scampini and a Mr. Hugh McKevitt were large stockholders in the corporation, and in 1934, formed a committee to try and effect a reorganization. The stockholders were circularized, and it was through one of these circulars that Sozzi met Scampini. Sozzi was made chairman of the stockholders' committee, McKevitt became

treasurer, and Scampini vice-president and general counsel for the corporation. After the committee was formed, the price of the stock on the open market advanced to around $4.00 or $5.00 per share. This price was attained in January, 1936.

The Globe Brewing Company was organized in May, 1933, to engage in the brewery business, and commenced operations in the same year. Its plant was located on the premises of the Merchants' Ice & Cold Storage Company, and it purchased from the latter considerable refrigeration space for its product. At first its operations were profitable, but after a price war in the beer industry it found itself in receivership in December of 1935. The company was originally organized with paid-up capital of $100,000. During the prosperous year or two of its existence a considerable portion of its profits was reinvested in the business. At the time of its receivership its indebtedness exceeded $100,000, with the Merchants' Ice & Cold Storage Company as one of its principal creditors and to an amount in excess of $23,000.

In January, 1936, Sozzi and Scampini attended a meeting of the stockholders of the Italo Petroleum Corporation at its place of business in San Francisco. With respect to this meeting, Scampini testified that Sozzi there said to him: "Have you got any more reorganizations like this one where we can all make some money. . . . If you see anything that comes your way, let me know." At that time Scampini, who was then the attorney for and a director in the Merchants' Ice & Cold Storage Company, had under consideration some informal statements and balance sheets of the Globe Brewing Company. About February 10, 1936, he telephoned Sozzi to come to his office, and he there showed him some audits prepared by Messrs. Lester, Herrick and Herrick, certified public accountants, which were addressed to the board of directors of the Globe Brewing Company. These audits showed as of October 31, 1934, total assets of the company in excess of $300,000, with deferred liabilities of approximately $69,000. As of December 5, 1935, the date on which the Globe Brewing Company went into receivership, the audit disclosed that the assets amounted to $232,364.03, with liabilities other than capital investment totalling $156,296.66. This audit indicated an equity on the date of the receivership in an amount of $76,000. Upon being called to the witness stand, Sozzi admitted having read these balance sheets and having talked them over with Scampini previous to February 15, 1936.

After considering the financial statements, Sozzi and Scampini went to the brewery and examined the premises. According to the testimony of Scampini, other meetings and conversations were had between him and Sozzi, in which Sozzi indicated that he wished to get out of the scavenger business in which he was then engaged and get into the brewery business. Scampini eventually stated that he thought that it would take about $25,000 in cash to effect a reorganization of the Globe Brewing Company and take it out of receivership. He suggested that Sozzi advance $17,500, and that the Merchants' Ice & Cold Storage Company put up the balance of $7,500. Sozzi indicated that it would be difficult for him to raise more than $14,000 in cash, and suggested that he would feel better about the deal if Scampini, too, would go into it. The negotiations finally resulted in Sozzi agreeing to advance $14,000, Scampini $3,500 and the Merchants' Ice & Cold Storage Company $7,500. The Merchants' Ice Acceptance Corporation, a subsidiary of the Merchants' Ice & Cold Storage Company, was to act as reorganization agent, and Scampini was to act as attorney in the reorganization proceedings. This agreement was reduced to writing as of February 15, 1936, and signed by the contracting parties. In accordance with its terms, the moneys were advanced, the reorganization effected, and the Globe Brewing Company discharged from receivership about the 23d of May, 1936.

On this date Sozzi became a director and vice-president of the Globe Brewing Company, and continued as such until September, 1937, when he became its president. During this period he was active in the management of the company, and his signature was required on all company checks. Monthly balance sheets of the company were always presented to him. In June, 1936, application was made to the Commissioner of Corporations by the Globe Brewing Company for a permit to issue for sale to the public 10,000 shares of its 7 per cent cumulative participating preferred stock of the par value of $10, at a price to net 85 per cent of its par value to the company. Consolidated profit and loss statements covering the periods May 1, 1934, to April 30, 1935, and May 1, 1935 to April 30, 1936, were appended to an amended application filed with the Commission on July 7, 1936. These statements showed that in May, 1934, the company had earned $23,957.93. A permit to sell the stock was granted on July 24, 1936, with an amended permit on October 16, 1936, which stated the

assets of the company to be $268,777.08, and its liabilities as $157,191.41, indicating an equity of $111,585.67. In November, 1936, Sozzi was issued a license to sell this stock, and he succeeded in disposing of a considerable portion of the issue. All sales were made on a subscription form which recited the assets and liabilities of the company as stated in the permit.

In July, 1936, Scampini severed his connections as attorney for the Globe Brewing Company, and in his place the company employed Messrs. Ellis & Steindorf. At about the same time he also severed his connections with the Merchants' Ice & Cold Storage Company, both as attorney and as a director. It was under the legal guidance of Messrs. Ellis & Steindorf that the permit to sell the preferred stock of the Globe Brewing Company was obtained. During this entire period Sozzi attended the meetings of the board of directors when the matters pertaining to the stock issue were discussed. The company failed to prosper, and in August, 1938, it again went into receivership. About June 15, 1938, a firm of accountants employed by Sozzi to make an audit of the company's books reported to him that the Merchants' Ice & Cold Storage Company had been overcharging the brewery for refrigeration. It is at this point that Sozzi claims discovery of the frauds alleged in the cross-complaint, but which was not filed by him until some two years later. He testified that upon receiving this report he went to Scampini and requested him to bring suit against the Merchants' Ice & Cold Storage Company to recover the overcharges, and then learned for the first time of the true condition of the Globe Brewing Company, and that Scampini had been acting as attorney for and was a director in the Merchants' Ice & Cold Storage Company in 1936, when the reorganization of the Globe Brewing Company was undertaken.

Sozzi alleges in his second amended cross-complaint that on February 10, 1936, the respondent entered into a conspiracy with the other cross-defendants to induce him to invest large sums of money in the Globe Brewing Company for their benefit; that in furtherance of the conspiracy, and on or about February 15, 1936, it was represented to him by Scampini that the assets of the Globe Brewing Company were worth $300,000, and that less than $75,000 would clear up all the liabilities; that the company had made as much as $24,000 in one month, although operating in receivership; that if he, the appellant, would raise $17,500, the Merchants' Ice & Cold Storage Company, a creditor of the Globe Brewing Company,

could be induced to advance $7,500, which sums together would be sufficient to take the company out of receivership. He further alleges that Scampini stated to him that if the Globe Brewing Company were reorganized, it would be easy to sell it at a profit of $100,000 in thirty days; that Scampini also represented to him that Mr. Herbert Fleishhacker had conversed with him on the telephone and wanted to buy the brewery, and that Mr. Tom Walker and the Grace Bros. Brewing Company were looking at the brewery with a view to buying it, and wanted it.

Shortly after Sozzi became a director and vice-president of the company, a representative of Grace Bros. Brewing Company inspected the plant, but nothing came of the visit. Scampini denies in his testimony that he ever mentioned the name of Herbert Fleishhacker to Sozzi. Sozzi's testimony is directly to the contrary. However, he does say that when he asked Scampini about Fleishhacker in April or May of 1936, at about the time he, Sozzi, went on the board of directors, he was informed by Scampini that Fleishhacker had turned his attention to a brewery in San Jose and was no longer interested in the Globe Brewery. Assuming that Sozzi's version is the correct one, he knew when he first went on the board of directors that there was no prospect of selling the brewery to Fleishhacker. According to Scampini, he never mentioned Walker to Sozzi, but when the Globe Brewing Company was about to go into receivership for the second time, Sozzi suggested Walker as a person who might pull the company out of its difficulties.

When an action such as this is not commenced until more than three years after the commission of the alleged fraud, the burden is upon the plaintiff to plead and to prove that he did not discover the facts constituting the fraud until within three years before the commencement of the action. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 437 [159 P.2d 958].) This is upon the theory that the provision of subdivision 4 of section 338 of the Code of Civil Procedure tolling the operation of the statute is an exception, and, to bring himself within it, the plaintiff is required to establish facts not only showing that he was not negligent in failing to make an earlier discovery, but also that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. (*Hobart* v. *Hobart Estate Co., supra.*) To meet this burden, it must be made to appear that he had no knowledge of facts

which would make a reasonably prudent person suspicious of the fraud complained of. This is the purport of section 19 of the Civil Code, which provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

Sozzi had at his command every means for verifying each statement attributed by him to Scampini from May 23, 1936 forward. On that date, he became a director and vice-president of the company and took joint control of its funds. He was also active in the management of the affairs of the concern. Moreover, in 1936, he joined in an application to the Corporation Commissioner for a permit to sell 10,000 shares of the stock of the company on the representation that the difference between the assets and liabilities of the company was in excess of $111,000. He personally sold substantial blocks of this stock on the authority of the permit. If Sozzi believed the statements allegedly made by Scampini that Fleishhacker and Walker were interested in buying the brewery, it became his duty to his stockholders on acceding to the offices of director and vice-president to investigate the prospects of a sale in these quarters. When he and the other directors offered to the public 10,000 shares of the stock of the company at $10 per share in October, 1936, it is presumed that he knew its financial condition. In the case of *Lady Washington Cons. Co.* v. *Wood*, 113 Cal. 482 [45 P. 809], cited in *Hobart* v. *Hobart Estate Co., supra,* it is said: "As the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts." This rule applies where failure to make inquiry under the circumstances would amount to a negligent omission. (*Tarke* v. *Bingham,* 123 Cal. 163 [55 P. 759].)

So where a plaintiff is under a duty to make inquiry concerning the existence of facts upon which he claims the fraud is based and inquiry would reveal those facts, he is charged with knowledge of their existence. And again, if the facts are presumptively within his knowledge, he will be deemed to have actual knowledge of their existence. It is incumbent upon him who seeks to bring himself within the exception to the general rule, as is said in *Lady Washington*

*Cons. Co.* v. *Wood, supra,* to "show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed."

█ The appellant has alleged here that the alleged conspirators concealed the financial condition and the lack of prosperity of the Globe Brewing Company from him from the 15th of February, 1936, until he made discovery of its true condition in June of 1938. The proof, as has been pointed out, reveals that from May 23, 1936, he was a director and vice-president of the company, and that in October of 1936, he was offering for sale to the public 10,000 shares of stock of the company for $100,000 under a permit issued by the Commissioner of Corporations. Under such circumstances, it must be presumed that he had knowledge of the facts which he alleges were concealed from him. Such being the case, he has failed to meet the burden of proving himself within the exception to the general statute. Having so failed, and the cross-action having been commenced more than four and one-half years after the date of the alleged fraud, it is barred by the three-year statute.

█ Since time has raised the bar of the statute, the errors complained of are rendered abstract. The rule applicable is stated in 2 California Jurisprudence, page 1004, section 595, as follows: "It is a general and well-settled rule that judgments will not be reversed because of errors that are harmless, that is to say, because of errors which do not prejudice the substantial rights of the appellant or affect the result of the action." Section 4½ of article VI of the Constitution is to the same effect. It thus becomes unnecessary to discuss in detail any of the specifications of error made by the appellant.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied April 19, 1947, and appellant's petition for a hearing by the Supreme Court was denied May 15, 1947.