253 P.2d 226

COOPER v. WESCO BUILDERS, Inc. et al.
WASSLER et al. v. CONTINENTAL STATE
BANK.

No. 7817.

Supreme Court of Idaho.

Jan. 21, 1953.

Elam & Burke, Boise, for respondent.

Hawley & Marcus, Boise, for appellants.

GIVENS, Justice.

Plaintiff sued Wesco Builders, Inc., for breach of a building contract, and respondent Bank and appellants for certain subsequent, but connected transactions injurious to her title.

Wassler, an individual, and Murray Burns Plumbing Co., a partnership, answered denying any nefarious complicity and cross-complained respectively against the Bank. The Bank demurred to plaintiff's complaint and the cross complaints, and moved to strike the material allegations thereof. The Bank's demurrer to plaintiff's amended complaint is not in the record, but the court in its judgment sustained it and the demurrers to the respective second causes of action of Wassler and Burns (their first causes of action being on asserted liens and asking no affirmative relief in connection therewith against the Bank), and sustained the motions to strike. Wassler and Burns, having failed and refused to amend during the time granted by the court, it entered judgment of dismissal of their respective second causes of action in their respective cross-complaints in favor of the Bank.

Plaintiff has disappeared from the action and the appeal herein is by Wassler and Burns and the sole question involved is whether or not their respective cross-complaints are good against the general demurrers and motions to strike. Disposition of the demurrers disposes of the motions, except as noted hereafter.

All intendments and inferences that may reasonably be drawn therefrom and the facts alleged will be construed in favor of the sufficiency of a pleading challenged by general demurrer. Paulsen v. Krumsick, 68 Idaho 341, 195 P.2d 363.

The respective cross-complaints are substantially the same, except as to the amount of the indebtedness of Wesco to the respective appellants and the consequent amounts claimed from the Bank and that Burns alleged it was a customer of the Bank. The other substantial differences are hereafter specifically mentioned.

Wassler's cross-complaint alleged in substance: that prior to contracting with Wesco Builders, Inc. to furnish materials for the construction by it of dwelling houses, he sought the advice of the Bank as to Wesco's credit and financial responsibility, with special reference to furnishing Wesco a carload of furnaces (Burns, labor and materials) for what will be termed the Warm Springs project in Boise, and William Goodall, President of the Bank, informed him—"We don't see what you have to worry about because we are going to finance those houses, and we will see that the bills are paid because we can't afford to have liens on them."

That this statement and representation were in the course and scope of Goodall's employment and appellants relied thereon and agreed to and did so furnish materials and labor.

That subsequently the Bank loaned Wesco $12,200 per unit for construction of the Warm Springs project, secured by a mortgage thereon; that though the Bank knew appellants relied on it to control the distribution of these loan funds to insure payment to appellants for work and materials, Wesco used considerable of these loan funds for purposes other than the construction of these units, with consent and approval of the Bank, knowing appellants would thereby not be paid; that appellants did not know of this until the units were substantially completed; that the Bank, to receive insurance from the Federal Housing Authority on its loan on these units, certified all construction bills had been paid and no liens had been filed, when in fact many unpaid construction bills were pending and appellants were damaged, because otherwise FHA would have required payment thereof before issuing FHA insurance.

That in September, 1949, after appellants learned a substantial portion of the construction loan money had been used for other purposes by Wesco, with the Bank's knowledge and consent, and Wesco's credit was not good, a creditors' conference was held. Time for filing liens had not then expired and appellants informed Wesco and the Bank they intended to file liens, whereupon the Bank, through Ben Wheeler, Vice President, and Wesco, sought to dissuade appellants from filing liens, and appellants were so influenced and persuaded not to file liens by the following false statements, representations and promises by Wheeler, acting in the course and scope of employment by the Bank:

(a) that the Bank and Wesco would "make every effort to pay" appellant. Being only a promise, this allegation of itself would not render respondent liable, but being connected with other actionable allegations, should not be stricken.

(b) that Wesco had started projects in Twin Falls and Idaho Falls (which appellants later learned had used much of the above construction loan money) and that the Bank would "handle" the creditors;

(c) that the profits from the Twin Falls and Idaho Falls projects would pay all bills of the Warm Springs project work; that such statements were untrue and misleading and meant to deceive, as Wheeler knew, but appellants did not; that the Twin Falls project was not carried on by Wesco; that the property in Idaho Falls had been conveyed previously to A. V. Pyper and not to Wesco, and Pyper had conveyed some of this property to Wheeler and Goodall and others interested in the Bank, so Wheeler knew the profits from the Idaho Falls project would not be paid to the creditors of the Warm Springs project buildings;

(d) that if appellants or others filed liens, Wesco would go into bankruptcy and appellants would receive nothing (obviously, no reliance can be placed on this allegation and it was properly stricken);

(e) that if liens were filed, the properties could not be sold and appellants would, therefore, not receive as much money (likewise, this allegation may not avail appellants and was properly stricken);

(f) that Wheeler further stated if no liens were filed, Wesco would give certain notes to the respective appellants, knowing the notes were worthless, and would convey to appellants certain buildings which would bring a profit, which Wesco did and that some, but not the assured, profits were realized.

That the Bank, through Wheeler, induced Wassler (Par. VI) to accept title to another duplex and give Wesco credit of $2,672.33 and accept a promissory note for $747.67 to be paid March 31, 1950, but which note was worthless, as the Bank knew, and the duplex was sold at a loss of $261.33 under the credit given of $2,672.33.

That the Bank, through Wheeler, induced Burns (Par. VII) to accept title to another duplex and give Wesco credit of $2,710.82 and accept a promissory note for $508.86, upon Wheeler's representation Burns would clear $2,710.82 by the transaction and that the Idaho Falls and Twin Falls projects were "looking pretty good" and profits therefrom would pay most of the bills on the Warm Springs project; that Burns has not been able to sell this duplex and thereby has been forced to make mortgage payments thereon.

█ It seems clear from the pleadings that Wassler and Burns, having helped build the houses above mentioned, would have been in as good a position as the Bank to know whether a profit could be realized from their sale; therefore, that portion of such representations may not avail appellants and was properly stricken.

Wassler asked damages against the Bank and Wesco Builders, Inc., for $4,279.67 and Burns for $9,076.83 and both appellants asked their liens, which they had not filed, be held prior in right to the Bank's mortgages, for an accounting by the Bank and Wesco of the Twin Falls and Idaho Falls projects and for costs, which they have heretofore refused.

█ Respondent cites Section 27, pages 781–83, 23 Am.Jur., to the effect that a false representation to be actionable must relate to a past or present existing fact and further argues that a representation must be made for the purpose of inducing action on the part of appellants and that the pleading must allege injury from the specific misrepresentation, and further that—

"Representation must be made for purpose of inducing action on part of appellants. (Statement on financial condition; no allegation that such was made for inducement, etc.)

"Appellants must allege were injured by specific misrepresentation."

and further argues:

"Appellants can point out nothing in their cross complaints which do not come under the classification of either

an opinion, a hope, a promise of future acts, an expectation or a prophesy.

"The appellants at the time they entered into contract with Wesco had the opportunity to protect themselves by providing for payment at stated intervals and from such funds as would be available. Later, after they were disgruntled, they had the opportunity to file their liens. The fact they did not do so must have been that they did not consider their lien rights were of any value. At any rate they did not allege any value in such lien rights. They had opportunity to protect themselves by their own acts and they do not show any injury from failure to file their liens."

The statement in this argument, "The fact they did not do so must have been that they did not consider their lien rights were of any value", completely ignores and is contrary to the allegations of the cross-complaint where it is directly alleged that cross-complainants were influenced and persuaded not to file liens by the false statements, representations and promises made to them by an employee of the Bank in the course of his employment.

The Sections of 23 Am.Jur., immediately following the section cited by respondent, discuss at length and cite authorities recognizing exceptions to, and qualifications of, the rule holding opinionated matter not fraudulent, Sections 29, 30 and 32; and as to matters of futurity and promises, Sections 35, 36 and 37; and on promises and assertions of intention, Sections 38, 40, 41, 42 and 43. Under Section 35 is cited Pocatello Security Trust Co. v. Henry, 35 Idaho 321, 206 P. 175, 177, 27 A.L.R. 337. The citations therein quoted with approval are as follows:

"A statement which by itself might be a mere expression of opinion may be so connected with a statement of a material fact as to amount to fraud. A statement of value involving and coupled with a statement of a material fact is fraud. If a material fact is misrepresented, the addition of a promise to such misrepresentation does not prevent it from being fraud, if the other elements of fraud exist. Where the promise is made without any intent on the promisor's part to keep it, but to induce action on the part of the promisee, it is held to be fraud. Page on Contracts, vol. 1, §§ 293–298.

" 'Fraud may be predicated upon the nonperformance of a promise in certain cases where the promise is the device to accomplish the fraud.' * * *

"False representations as to future events will constitute fraud, where these events depend upon the acts of the party making the representations, and form the inducement whereby the other party is led into the transaction. * * *

" 'If the promise is accompanied with statements of existing facts which

show the ability of a promisor to perform his promise, and without which the promise would not be accepted or acted upon, such statements are denominated representations, and if falsely made are grounds for avoiding the contract, though the thing promised to be done lies wholly in the future.' * * *

"False representations by a vendor of land of his intention to make improvements which will benefit the property sold are ground for rescinding the contract. * * *

"One who is induced to buy lots in a proposed town by the representations of the proprietor that a dock will be constructed near the premises, and that a town will be laid out and built up, and the streets opened and improved, will be relieved in equity from the performance of the contract, where the proprietor abandons the intention of making the promised improvements and the town never comes into existence, though it is not alleged that there was an intention not to perform when the sale was made. * * *

"'A fraudulent promise which induces a person to act in such a way as to affect his legal right, or to alter his position to his injury or risk, is *actionable.*'" (Emphasis ours.)

See also Miller-Cahoon Co. **v.** Wade, 38 Idaho 484, 221 P. 1102.

Section 6, page 222, 37 C.J.S., Fraud, closely parallels Section 27 in 23 Am.Jur., and immediately succeeding sections likewise elaborate the exceptions as to opinions and promises intermingled with facts and cite Pocatello Security Trust Co. v. Henry, supra, as appellants do also, as being in line with the now accepted and recognized rules therein laid down.

The first alleged false statements and representations of the Bank through its officers had to do with the Bank financing Wesco and assuring appellants they would see the money advanced would be used for payment of the claims of appellants, and perhaps others, in connection with the Warm Springs buildings.

Second, the Bank's false certification to the FHA that all bills against the Warm Springs project had been paid, and the Bank thereby securing insurance on its loan, which of course was a distinct advantage to the Bank and a detriment, as alleged, to appellants. This certification not being made to appellants, would not be actionable by them, 37 C.J.S., Fraud, § 36, page 284, but would be pertinent as showing respondent's course of conduct relative to persuading appellants not to file liens and as bearing on respondent's scienter and intent. 37 C.J.S., Fraud, § 23, page 262.

Third, its statement the Idaho Falls and Twin Falls projects which Wesco was building, would pay or help pay the bills on the Warm Springs projects and thereby

induced appellants not to file their liens, it being alleged Wesco was not engaged in the Twin Falls building project and that the lots on which the buildings were built in Idaho Falls did not belong to Wesco, but had been transferred to other parties. In this connection appellants seek an accounting of the profits on these two projects. Conceding there may be an inconsistency between their statements, the Bank falsely represented Wesco was engaged in the construction of these projects, which statements appellants asserted were untrue completely as to the Twin Falls project and to the extent the lots in Idaho Falls did not belong to Wesco and asked an accounting of these projects, respondent's demurrers were only general, merely on the ground the cross-complaints did not state facts sufficient to constitute causes of action; therefore, the cross-complaints are not vulnerable to attack by the general demurrers. White Earth Products Co. v. Idaho First Nat. Bank, 68 Idaho 132, 189 P.2d 1022.

The fourth feature had to do with respondent persuading appellants to take certain houses on the theory their resale would pay appellants' bills, and to take some additional notes—it being alleged the Bank knew the buildings would not realize enough and the notes were worthless. It is urged these houses were taken on the apparent theory of settling their (appellants') claims and thereby waived the fraud. The house and note referred to in Wassler's complaint, Par. V(f), and Burns', Par.

IV(e), were worth and realized far less than the total claims against Wesco. The allegation must be strained to be considered as a waiver or settlement, and it would be contrary to the general rule of interpretation of a pleading as against a general demurrer to so construe it, hence, while it was not an actionable representation as elsewhere herein shown, it was not pleaded as a settlement in whole or in part of appellants' claims. The house and note referred to in Wassler's Par. VI being given for an extended credit of $2,672.33, but not in satisfaction of any other part of appellants' claim, could be considered as liquidating that amount and should be stricken from the cross-complaint, but would not otherwise affect appellants' right to relief on the other remaining alleged fraudulent representations. The same is true as to Burns' Par. VII.

The allegations with regard to the Bank loaning money and its control of distribution thereof were as to the loan, the statement of a past or present fact and the Bank, by loaning the money and claiming control of its expenditure had it within its power to pay appellants, at least in part. The Bank's statements with regard to Wesco being engaged in carrying on the Idaho Falls and Twin Falls projects, when it was not so engaged, had to do with both past and present facts. Also, as to its representing to the FHA that all bills had been paid.

The Bank's position as to its mortgage which it took covering the property involved was bettered by Wassler and Burns not filing liens, which the cross-complainants alleged they were induced not to file by reason of the alleged false statements, because, if liens had been filed, they would have been superior to the mortgage, if appellants had started to deliver materials or render services before the mortgage was given. Section 45-506, I.C. See Par. III & IV of the cross-complaints. The Bank, therefore, profited and the cross-complainants were injured by reliance upon the false statements and the cross-complaints allege (Par. V, Wassler; Par. VI, Burns) these statements were made to influence and persuade and did influence cross-complainants to their detriment; thus, the pleadings in this respect meet respondent's contentions.

The above sections in both the American Jurisprudence and C.J.S. hold there need not be a fiduciary relationship between the person making the alleged fraudulent statements and the party to whom they were made, to render the person making the statements liable for fraud and deceit. The second paragraph of Section 30, 23 Am.Jur., pp. 788–789, thus states:

"In order to hold one liable for fraud for the expression of an opinion, the relationship between the parties need not be a formal fiduciary or confidential one in all instances, such as the relationship of trustee and cestui que trust. It is sufficient that the representor had superior knowledge, or held himself out as having superior knowledge, and knew that the representee confided in him and was guided by his opinion. Even matters of opinion may amount to affirmation, and be the inducement to a contract, especially where the parties are not dealing on equal terms, and one of them has, or is presumed to have, means of information not equally open to the other. Hence, the rule is that if the person expressing the opinion possesses superior knowledge, and it is a justifiable conclusion that he intended untruly to imply that he knew facts such as would justify his opinion, his opinion may be regarded in law as an assertion of fact and not honestly entertained."

See also 37 C.J.S., Fraud, § 10(b), page 230.

Conceding the Bank, though Burns alleged he was a customer of the Bank, was not in a fiduciary relationship to him, and Wassler did not allege he was a depositor, nevertheless, by its statement it was loaning Wesco money and would control distribution thereof and its statements with regard to Wesco's activities in Twin Falls and Idaho Falls, sufficiently indicated in testing the pleading, that the Bank had knowledge of Wesco's activities and its own dealings with Wesco, which appellants did not have and thus the above sections are pertinent and controlling. Fox v. Cosgriff, 66 Idaho 371, 159 P.2d 224.

Respondent, in support of their general contention the Bank is not liable, refers us to the note in 48 A.L.R. 529, citing on page 538 Jorgensen v. Albertson, 129 Wash. 686, 225 P. 639, wherein the court said relative to a claim of liability against a bank that was sued for damages for fraud and deceit, as herein:

"The complaint was good as against demurrer as stating a cause of action against both the bank and the individual defendants. Albertson and Bruen were president and cashier, respectively, of the bank. The complaint alleged false and fraudulent representations made by Albertson and Bruen as representing the bank on November 23, 1920. It also alleges the falsity of the representations that they were relied upon, and that the president and cashier of the bank, when making the representations, knew them to be false, or made them recklessly, not knowing them to be true, resulting in damage. These representations, under decisions of this court too numerous to prolong this opinion by citing, constitute representations of fraud and deceit, ·and the bank would be as liable for the tort of its managing officers, the president and cashier, if made in its behalf, as was testified by respondent, as any other principal. (Cases.) A multitude of state and federal cases are cited in the last-cited case to sustain that contention as to the liability of a bank for the torts such as deceit and fraud. All would therefore be liable for the tort, jointly and severally." 225 P. at pages 640, 641.

The judgment is, therefore, reversed and the cause remanded with instructions to overrule the motions to strike, except as noted, and demurrers, and reinstate the answers and cross-complaints as to the second causes of action therein, except Par. V(d) and (e) and the part of Par. VI referring to the duplex, Wassler's; and Par. VI(c) and (d) and the part of Par. VII referring to the duplex, Burns' (the first causes of action were, as indicated above, extant at all times) and proceed accordingly. Costs to appellants.

PORTER, C. J., THOMAS, J., and ANDERSON, District Judge, concur.

TAYLOR, Justice (dissenting).

The misrepresentations charged against the officers of the Bank are for the most part in the nature of promises and expressions of opinion. In fact, all of them are of that character with the exception of the representation that the Wesco Builders were then engaged in building projects at Twin Falls and Idaho Falls, which representation it is alleged was untrue as to the Twin Falls project. This constitutes a representation as to existing fact, and perhaps would be sufficient, when taken together with the promises alleged, to state a cause of action for fraud, the representa-

tion and the promises being alleged as the means by which the cross-complainants were dissuaded from filing their respective liens and by which each was persuaded to accept title to a duplex, and a promissory note made by Wesco Builders, as payments on account.

As to the duplexes, it appears from the pleading that the amount realized by the cross-complainants out of these assets was in each case so near the credit given, as to indicate that the value of the duplexes was not fraudulently misrepresented.

As to the notes, the cross-complaints show they were accepted by the cross-complainants after they learned that the credit of the maker was not good. However, if the pleadings had stopped here, I would agree that they were good as against a general demurrer.

The representations and promises complained of are charged to have been made in the course of a number of conferences occurring between the parties in September, 1949, after substantial performance of the contracts. These negotiations apparently culminated in the transfer of the duplexes and the delivery of the notes. The cross-complainants then go further and allege that on or about January 31, 1950, they were each "induced and persuaded" by the Wesco Builders and the Bank to accept title to another duplex, and another note made by Wesco Builders, for credit on their respective accounts. Thus it appears that four months after the promises were made, and no profits appearing from the Twin Falls or Idaho Falls projects, and apparently as the result of further dissatisfaction expressed on their part, they were "induced and persuaded" to give credit for additional duplexes and promissory notes of the Wesco Builders (whose credit they knew was not good). Thus, they dealt with the party to whom they furnished the materials and labor, on the apparent theory of settling their claims, and accepted assets from the builders, from which the builders might otherwise have received a greater return, and caused the builders and the Bank to change their position in an effort to reach a settlement. By so doing they have waived any cause of action they may have had for any fraud previously practiced upon them. 37 C.J.S., Fraud, § 69; 24 Am.Jur., Fraud and Deceit, Par. 214; Beggs v. Spalding, 56 Cal.App. 21, 204 P. 429; Monahan v. Watson, 61 Cal.App. 417, 214 P. 1001; Anderson v. Laws, 176 Or. 468, 159 P.2d 201; Schied v. Bodinson Mfg. Co., 79 Cal.App.2d 134, 179 P.2d 380; Conzelmann v. Northwest Poultry & Dairy Prod. Co., 190 Or. 332, 225 P.2d 757.

The Bank's demurrer was properly sustained and the judgment should be affirmed.