260 P.2d 1101

KOEHLER et ux. v. STENERSON et al.
No. 7928.

Supreme Court of Idaho.
May 5, 1953.

On Rehearing Sept. 29, 1953.

Gee & Hargraves, Zener & Peterson, Pocatello, for appellants.

O. R. Baum, R. M. Whittier, Mark B. Clark, Pocatello, for respondents.

**PORTER, Chief Justice.**

This is an action by respondents, plaintiffs below, to recover damages for alleged fraud in connection with a contract of purchase of a home to be built in Pocatello. Respondents' complaint was amended before and during the trial. It is lengthy and contains much repetitious and evidentiary matter. In order to properly present the questions involved in this appeal, we deem it necessary to summarize the material parts of the amended complaint.

It is alleged in the amended complaint that I. S. Stenerson, doing business under the firm name of Builtrite Homes, and the Smith-Marshall Agency, Inc., commenced a development within the limits of the City of Pocatello, known as the Northland Addition. That pursuant to a contract between said defendants, Stenerson agreed to

construct and did construct therein certain homes known as the Builtrite Homes and more particularly the home of the plaintiffs. That Stenerson obtained the usual financial commitments for such homes; and the said Smith-Marshall Agency acted as the general fiscal agent for the Builtrite Homes, and prepared and handled the execution of the contracts of purchase and sale thereof.

That the Smith-Marshall Agency advertised for sale the homes built and to be built in such addition. That the advertisements run by the Smith-Marshall Agency in the issues of the · Idaho Sunday Journal of Pocatello for June 18 and June 25, 1950, outlined the type and character of the homes and the locations thereof and the manner in which said homes were being built and the various facilities that went with said homes and, among other things, advertised:

"Paved streets, curbs, and gutters, city water, electricity, telephones (available), on bus route, sidewalks and curb to stoop,
and that all the homes would be equipped with

"Youngstown kitchens, electric water heaters, Crane bathroom fixtures, insulation (floors and ceilings), conventional wood floors (asphalt tile throughout), weather stripped windows, automatic oil forced air furnaces (thermostatically controlled), Weiser hardware, asphalt impregnated insula-

tion sheathing, dry wall interior construction, $2'' \times 4''$ studs, $2'' \times 8''$ floor joists;

and that such homes were built for Pocatello weather, * * *".

That by reason of such advertisements, plaintiffs became aware that certain homes known as the Builtrite Homes were to be constructed. That they visited the so-called model home erected by the defendant Stenerson in the Northland Addition and which was being exhibited by the defendant Smith-Marshall Agency. That at such model home, agents of the defendants represented that any home constructed by prospective purchasers would be on the same type and floor plan as the model home and would contain the same type and kind of materials and equipment; and that the furnaces to be installed in said homes were of an adequate size and type to properly heat the homes in which they were to be placed.

That by reason of such representations made to plaintiffs and the advertisements in the newspaper and the inspection of the model home, the plaintiffs visited the Smith-Marshall Agency offices in Pocatello and stated they desired to purchase a home exactly as to type and kind and construction like the model home, and as shown by the plans and specifications exhibited to them at the time they inspected the model home. That they made the required down payment to the Smith-Marshall Agency which agency prepared the necessary con-

tract and supervised its execution for the purchase and sale of a Builtrite Home.

"That the said plaintiffs herein, relying upon the advertisements and statements as made by the said defendants, Smith-Marshall Agency, Inc., and the said I. S. Stenerson, and believing that the said statements, oral and in writing, were true and that the said homes would be constructed as advertised and as stated by the said parties, and that the same would be ample and sufficient to withstand the Pocatello weather, entered into a written contract of purchase with said I. S. Stenerson, as of the 3rd day of August, 1950, at which time the said I. S. Stenerson and the said defendant, Smith-Marshall Agency, Inc., who drafted said contract and who prepared the same, and who caused the same to be signed, well knew, or should have known, that the said representations as made and as stated in the paper, were not true, and that the said statements were false, misleading and deceiving, and your said plaintiffs aver that the said defendants intended to mislead the said plaintiffs herein by reason of such statements." (ff. 2190–2191.)

It is further alleged that the said home as constructed for plaintiffs was not constructed in accordance with the plans and specifications exhibited to plaintiffs and that the said workmanship was not as shown in said model home and that the materials used were not as used in the model home and that the furnace was not installed in the manner as shown in the model home; that the furnace was inadequate in size and improperly installed and required but did not have heating ducts to the outer walls as shown in the model home. That to make the home comparable to the home which it was represented would be built, plaintiffs will be compelled to spend the following sums:

"For installing heating ducts in the kitchen, bedrooms and bathroom— $182.00

To restore the insulation and place baffles around the ventilators— 30.00

To correct the floors, thereby making the same level— 558.00

To correct the window situation— 60.00

To repaint the house— 375.00

To pave the proportion of the street that should be paved, the sum of 264.00

To put in electric receptacle and ground wire— 14.25"

And that plaintiffs by reason of said fraud and misrepresentations have been damaged in the total of said sums, to-wit, $1,483.25, for which sum plaintiffs pray judgment.

The defendant, International Oil Burner Company, did not appear in the action and is not involved in the judgment nor in this appeal. Defendant, Stenerson, and defendant, Smith-Marshall Agency, filed

answers consisting of general denials. The cause was tried to a jury and resulted in a verdict in favor of respondents in the sum of $1,483.25. Judgment was entered accordingly. Motions for judgment notwithstanding the verdict and for new trial were made by appellants. Such motions were denied by the trial court. Appellants have each appealed from the judgment and from the orders of the court denying the motions for judgment notwithstanding the verdict and for new trial.

There are nine assignments of error with many subdivisions of each assignment. It would be impracticable in an opinion to discuss in detail all the contentions of appellants. While we have considered all the questions raised, we will only discuss those we feel merit mention.

■ Appellants first contend that the court erred in overruling their objection to the admission of any evidence by respondents on the ground that the amended complaint does not state a cause of action. In essence, the amended complaint alleges that appellants knowingly and falsely misrepresented in certain particulars set out in the amended complaint the kind and type of materials intended to be used in the construction of the home in question, and that the materials thereafter used were not of the kind and type as represented; and in particular, that the appellants knowingly and falsely represented that the furnace to be installed would have ducts to the outer walls, be thermostatically con-

trolled and of sufficient size to properly and adequately heat such home in Pocatello weather. The amended complaint further alleges that respondents relied upon such representations and acted thereon to their damage. The facts thus pleaded allege the existence of all the requisite elements of fraud. The amended complaint states a good cause of action in fraud for damages. The trial court did not err in admitting evidence in support of the allegations of the amended complaint. Paulsen v. Krumsick, 68 Idaho 341, 195 P.2d 363; Pocatello Security Trust Co. v. Henry, 35 Idaho 321, 206 P. 175, 27 A.L.R. 337; Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Weitzel v. Jukich, Idaho, 251 P.2d 542; Cooper v. Wesco Builders, Inc., Idaho, 253 P.2d 226; Keane v. Allen, 69 Idaho 53, 202 P.2d 411; Merchants Ice & Cold Storage Co. v. Globe Brewing Co., 78 Cal.App.2d 618, 178 P.2d 503.

■ Appellant Smith-Marshall Agency contends proof is totally lacking that it committed fraud in any of the particulars charged in the amended complaint. Whether or not fraud has been committed is to be determined from all the facts and circumstances of the case. Penn. Mutual Life Ins. Co. v. Ireton, 57 Idaho 466, 65 P.2d 1032; Young v. California Ins. Co., 55 Idaho 682, 46 P.2d 718; Pocatello Security Trust Co. v. Henry, supra. The transcript in this case consists of two volumes containing a total of 816 pages. It would be impracticable to summarize all

288

the evidence offered in proof of the allegations of the amended complaint bearing on fraud on the part of the Smith-Marshall Agency. We must content ourselves with saying that the transcript discloses substantial, though at times conflicting, evidence to sustain the charges of fraud against the Smith-Marshall Agency. We have held repeatedly and uniformly that this court will not disturb the verdict of a jury where it is sustained by substantial though conflicting evidence. Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651.

After filing answers, appellants made a demand upon respondents for a bill of particulars setting out the items of damage and the amount of each claimed by respondents. Respondents did not furnish such bill of particulars and appellants now urge that the court erred in permitting respondents to offer evidence as to such items of damage. Section 5–803, I.C., provides in part as follows:

"It is not necessary for a party to set forth in [a] pleading the items of an account therein alleged, but he must deliver to the adverse party within ten days after a demand thereof in writing, a copy of the account, or be precluded from giving evidence thereof."

■■ In Miller v. Village of Mullan, 17 Idaho 28, 104 P. 660, 19 Ann.Cas. 1107, the court noted but did not decide the question of whether the terms of such section are applicable to an action in tort. The cases of Alexander v. United States, 9 Cir., 57 F. 828, and Utah State Building & Loan Ass'n v. Perkins, 53 Utah 474, 173 P. 950, seem to support the view that such section would not be applicable in this suit for damages for fraud. However, our court has recognized that in addition to this statute, the court in a proper case has the inherent power to require a bill of particulars. Nelson Bennett Co. v. Twin Falls L. etc. Co., 14 Idaho 5, 93 P. 789, and Intermountain Ass'n of Credit Men v. Milwaukee Mechanics' Insurance Co., 44 Idaho 491, 258 P. 362. In Miller v. Village of Mullan, supra, the court held that the requirement of service of itemized statement under such statute was not mandatory but directory and vests a discretion in the trial court as to whether or not the extreme penalty of excluding evidence shall be inflicted. See also, State v. Clark, 47 Idaho 750, 278 P. 776.

■ An examination of the amended complaint effective at the time the demand for the bill of particulars was made shows that the items of damage upon which the respondents relied and offered evidence were set out in such amended complaint, although the amount of damage arising from each item was not pleaded until the close of plaintiffs' case. It is not pointed out how appellants were in any way prejudiced by the failure of respondents to supply a bill of particulars. It does not appear that the trial court abused its discretion in refusing

to sustain objections to evidence concerning the items of damage claimed by respondents.

Appellants complain of certain instructions given by the court and of the court's failure to give certain instructions requested by appellants. An examination of the court's charge as a whole discloses that the same fairly and adequately presented to the jury the issues made by the pleadings and proof. We find no reversible error in the court's action in giving or refusing to give the questioned instructions.

Many of appellants' assignments of error challenge the rulings of the court on the admissibility or non-admissibility of evidence offered as to damages. The court gave Appellant Stenerson's Requested Instructions No. 4 and No. 10 as to the proper measure of damages. His Requested Instruction No. 4 reads as follows:

"You are further instructed that in this case, the plaintiffs by their pleading and proof have confined themselves to the following items: (A list of the items of damage pleaded in the amended complaint.)

"And you are instructed that unless each and all of these items which you find to have resulted from fraudulent representations made by the defendants in respect to these items, the plaintiffs are not entitled to recover, except as to those items which you find were fraudulently represented to

them as fraud as heretofore defined to you in other instructions. That is to say, if you should find that these items, or any of them, were in fact elements of damage proven by a preponderance of the evidence that such damage came about by reason of any act or acts of the plaintiffs, or if you should find that any of these items were the result of defective performance of the contract, or a failure to perform work in a workmanlike manner, then you are not entitled to allow any such damages as you may find result from the causes other than fraudulent representations on the party of the defendants."

Instruction No. 10 requested by both appellants reads as follows:

"You are instructed that in order for the plaintiffs to show damage from alleged misrepresentations or deceit practiced upon them, they are required to prove by the preponderance, or greater weight of the evidence, that the property which they received was of less value than the price which they paid for it.

"Under this rule, you are instructed that the law in Idaho, the law which governs this case, is that the plaintiffs in cases of this kind, are not entitled to the benefit of any bargain which they have made, nor, in such cases, are they entitled to credit for the increase in the value of property

which resulted from no efforts or improvements of their home.

"To be specific, if you find that the house which the plaintiffs received, in the condition which they received it, and which has been described to you, had a reasonable market value of $7,500 or more, on December 15, 1950, then the plaintiffs have suffered no legal damage, and you should return a verdict for the defendants."

In Idaho we have generally followed the so-called out-of-pocket rule that where a person is induced by fraud to purchase property his measure of damages is the difference between the contract price and the actual value of the property at the time of sale. Smith v. Neeley, 39 Idaho 812, 231 P. 105; Smith v. Johnson, 47 Idaho 468, 276 P. 320; Frank v. Davis, 34 Idaho 678, 203 P. 287; Gridley v. Ross, 37 Idaho 693, 217 P. 989; Jesse M. Chase, Inc. v. Leonard, 69 Idaho 109, 203 P.2d 600; Addy v. Stewart, 69 Idaho 357, 207 P.2d 498; Weitzel v. Jukich, supra.

The reasonable cost of supplying or repairing the parts necessary to put the home in the condition it was represented it would be in was proper evidence to be considered by the jury in determining the difference if any between the purchase price and the value of the home as delivered to respondents. Addy v. Stewart, supra. Also, the transcript contains direct evidence as to the difference in value between the contract price and the value of the home as delivered in conformity with the requirements of the out-of-pocket rule as to the measure of damages.

The court's rulings on the admissibility of evidence as to damages followed the theory contained in the instructions given at appellants' request and we find no error in this respect which appellants are in a position to urge.

It appearing that the verdict and judgment are sustained by substantial evidence and that no reversible error was committed by the court in its rulings or in the instructions given, the judgment of the trial court is affirmed. Costs awarded to respondents.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.

On Rehearing

PORTER, Chief Justice.

Appellant Smith-Marshall. Agency, Inc., a corporation, duly filed a petition for rehearing which petition was granted by this court. Appellant, I. S. Stenerson, did not join in such petition and did not file a separate petition for rehearing within the time allowed by Rule 47 of this court, or at all. Stenerson did not participate in the rehearing or ask leave to so do.

At the rehearing, respondents contended that the interests of appellant, I.

S. Stenerson, and of appellant Smith-Marshall Agency, Inc., a corporation, were separate and distinct and that a rendition of a different judgment on rehearing from the original judgment would inure only to the benefit of the Smith-Marshall Agency, Inc., and that I. S. Stenerson is bound by the original judgment. Respondents further contended that upon the expiration of the time allowed for the filing of a petition for rehearing as provided by Rule 47 of the Appellate Rules of the Supreme Court, respondents were entitled and are now entitled to the issuance of a remittitur affirming the judgment against I. S. Stenerson. With these contentions of respondents we are in accord. 4 C.J.S., Appeal and Error, § 1452, p. 2049; Caldwell v. Caldwell, La.App., 55 So.2d 258; Graham v. Clearman, Tex.Com.App., 16 S.W.2d 522.

■ The gist of the contentions of appellant Smith-Marshall Agency, Inc., upon rehearing is that such appellant was a mere broker in the sale of the house involved and as such is not responsible for representations made within the scope of its authority in good faith reliance upon the representations of I. S. Stenerson, its principal, made to such appellant as broker. The evidence shows that such appellant went far beyond its rights and duties as a broker. It procured the land for the subdivision. Its president went with Stenerson to Seattle, Washington, to decide upon the heating plants for the homes to be built. It secured the financial commitment for financing the purchases of the homes from the New York Life Insurance Company. It prepared and had executed the mortgages and made a charge for servicing same. It did the advertising in the newspapers and was in charge of the model home. It could be contended with considerable merit that such acts show appellants were engaged in a joint venture in promotion of the subdivision in question. However, we do not deem it necessary to so hold as there is ample evidence to support a finding of fraudulent representations on the part of appellant Smith-Marshall Agency, Inc.

The advertisements in the newspapers represented that the streets would be paved. The President of Smith-Marshall Agency, Inc., testified that he obtained the information for such advertisements from the submission list of materials submitted by Stenerson to the Federal Housing Administration. Such submission list called for oiled streets.

The advertisements, among other things, represented that the homes would be supplied with automatic oil forced-air furnaces (thermostatically controlled); and there is testimony that the agents of such appellant represented that such furnaces would be of adequate size and type to properly heat such homes. There is testimony that the model home had a register against the wall in each of the bedrooms and in the living room, which would lead

prospective purchasers to believe that such registers were to be served by ducts; and also had registers and ducts to the bathroom and kitchen. It also had a thermostat on the wall in the living room. The evidence shows that the registers in the bedrooms and living room were dummies and that apparently the registers and ducts were taken out of the bathroom and kitchen. The house delivered to respondents did not have any registers or ducts to any room and the only heat outlets were two registers in the front room attached directly to the furnace. There was a thermostatic control on the furnace to prevent the furnace from overheating but no thermostatic control of the temperature in the house. The heating plant proved entirely inadequate. The evidence discloses that the Smith-Marshall Agency, Inc., knew the type of heating plant to be installed in the home built for respondents and that it did not correspond to the representations made in the advertisements and in the showing in the model home.

A complaint in a suit charging fraud need not allege the falsity of each and every material representation made, and a single material false representation, if properly pleaded, is sufficient to sustain the complaint. Paulsen v. Krumsick, 68 Idaho 341, 195 P.2d 363; MacLeod v. Stelle, 43 Idaho 64, 249 P. 254; Merchants Ice & Cold Storage Co. v. Globe Brewing Co., 73 Cal.App.2d 828, 167 P.2d 503; Cooper v. Wesco Builders, 73

Idaho 383, 253 P.2d 226. It necessarily follows that proof of a properly pleaded single material false representation is sufficient to sustain a judgment for damages.

We adhere to the original opinion rendered in this case. The judgment of the trial court is affirmed. Costs to respondents.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.